CALIFORNIA *v.* PRYSOCK

No. 80–1846.   Decided June 29, 1981

PER CURIAM.

This case presents the question whether the warnings given to respondent prior to a recorded conversation with a police officer satisfied the requirements of *Miranda* v. *Arizona,* 384 U. S. 436 (1966).   Although ordinarily this Court would not be inclined to review a case involving application of that precedent to a particular set of facts, see *Fare* v. *Michael C.,* 439 U. S. 1310, 1314 (1978) (REHNQUIST, J., in chambers, opinion of Court at 442 U. S. 707 (1979)), the opinion of the California Court of Appeal essentially laid down a flat rule requiring that the content of *Miranda* warnings be a virtual incantation of the precise language contained in the *Miranda* opinion.   Because such a rigid rule was not mandated by *Miranda* or any other decision of this Court, and is not required to serve the purposes of *Miranda,* we grant the motion

of respondent for leave to proceed *in forma pauperis* and the petition for certiorari and reverse.

On January 30, 1978, Mrs. Donna Iris Erickson was brutally murdered. Later that evening respondent and a codefendant were apprehended for commission of the offense. Respondent was brought to a substation of the Tulare County Sheriff's Department and advised of his *Miranda* rights. He declined to talk and, since he was a minor, his parents were notified. Respondent's parents arrived and after meeting with them respondent decided to answer police questions. An officer questioned respondent, on tape, with respondent's parents present. The tape reflects that the following warnings were given prior to any questioning:

"Sgt. Byrd: . . . Mr. Randall James Prysock, earlier today I advised you of your legal rights and at that time you advised me you did not wish to talk to me, is that correct?

"Randall P.: Yeh.

"Sgt. Byrd: And, uh, during, at the first interview your folks were not present, they are now present. I want to go through your legal rights again with you and after each legal right I would like for you to answer whether you understand it or not. . . . Your legal rights, Mr. Prysock, is [*sic*] follows: Number One, you have the right to remain silent. This means you don't have to talk to me at all unless you so desire. Do you understand this?

"Randall P.: Yeh.

"Sgt. Byrd: If you give up your right to remain silent, anything you say can and will be used as evidence against you in a court of law. Do you understand this?

"Randall P.: Yes.

"Sgt. Byrd: You have the right to talk to a lawyer before you are questioned, have him present with you while you are being questioned, and all during the questioning. Do you understand this?

"Randall P.: Yes.

"Sgt. Byrd: You also, being a juvenile, you have the right to have your parents present, which they are. Do you understand this?

"Randall P.: Yes.

"Sgt. Byrd: Even if they weren't here, you'd have this right. Do you understand this?

"Randall P.: Yes.

"Sgt. Byrd: You all, uh,—if,—you have the right to have a lawyer appointed to represent you at no cost to yourself. Do you understand this?

"Randall P.: Yes.

"Sgt. Byrd: Now, having all these legal rights in mind, do you wish to talk to me at this time?

"Randall P.: Yes." App. A to Pet. for Cert. i–iii.

At this point, at the request of Mrs. Prysock, a conversation took place with the tape recorder turned off. According to Sgt. Byrd, Mrs. Prysock asked if respondent could still have an attorney at a later time if he gave a statement now without one. Sgt. Byrd assured Mrs. Prysock that respondent would have an attorney when he went to court and that "he could have one at this time if he wished one." *Id.*, at 11.[1]

---

[1] The tape reflects the following concerning the off-the-record discussion:

"Sgt. Byrd: . . . Okay, Mrs. Prysock, you asked to get off the tape . . . . During that time you asked, decided you wanted some time to think about getting, whether to hire a lawyer or not.

"Mrs. P.: 'Cause I didn't understand it.

"Sgt. Byrd: And you have decided now that you want to go ahead and you do not wish a lawyer present at this time?

"Mrs. P.: That's right.

"Sgt. Byrd: And I have not persuaded you in any way, is that correct?

"Mrs. P.: No, you have not.

"Sgt. Byrd: And, Mr. Prysock is that correct that I have done nothing to persuade you not to, to hire a lawyer or to go on with this?

"Mr. P.: That's right.

At trial in the Superior Court of Tulare County the court denied respondent's motion to suppress the taped statement. Respondent was convicted by a jury of first-degree murder with two special circumstances—torture and robbery. Cal. Penal Code Ann. §§ 187, 190.2, 12022 (b) (West Supp. 1981). He was also convicted of robbery with the use of a dangerous weapon, §§ 211, 12022 (b), burglary with the use of a deadly weapon, §§ 459, 12022 (b), automobile theft, Cal. Veh. Code Ann. § 10851 (West Supp. 1981), escape from a youth facility, Cal. Welf. & Inst. Code Ann. § 871 (West 1972), and destruction of evidence, Cal. Penal Code Ann. § 135 (West 1970).

The Court of Appeal for the Fifth Appellate District reversed respondent's convictions and ordered a new trial because of what it thought to be error under *Miranda*. App. A to Pet. for Cert. 4. The Court of Appeal ruled that respondent's recorded incriminating statements, given with his parents present, had to be excluded from consideration by the jury because respondent was not properly advised of his right to the services of a free attorney before and during interrogation. Although respondent was indisputably informed that he had "the right to talk to a lawyer before you are questioned, have him present with you while you are being questioned, and all during the questioning," and further informed that he had "the right to have a lawyer appointed to represent you at no cost to yourself," the Court of Appeal ruled that these warnings were inadequate because respondent

---

"Sgt. Byrd: Okay, everything we're doing here is strictly in accordance with Randall and yourselves, is that correct?

"Mr. P.: That is correct.

"Sgt. Byrd: Okay. Uh, all right, Randy, I can't remember where I left off, I think I asked you, uh, with your legal rights in mind, do you wish to talk to me at this time? This is with everything I told you, all your legal rights, your right to an attorney, your right, and your right to remain silent, and all these, I mean do you wish to talk to me at this time about the case?

"Randall P.: Yes." App. A to Pet. for Cert. iii–iv.

was not explicitly informed of his right to have an attorney appointed before further questioning. The Court of Appeal stated that "[o]ne of [*Miranda's*] virtues is its precise requirements which are so easily met," and quoted from *Harryman* v. *Estelle,* 616 F. 2d 870, 873–874 (CA5), cert. denied, 449 U. S. 860 (1980), that " 'the rigidity of the *Miranda* rules and the way in which they are to be applied was conceived of and continues to be recognized as the decision's greatest strength.' " App. A to Pet. for Cert. 12. Relying on two previous decisions of the California Court of Appeal, *People* v. *Bolinski,* 260 Cal. App. 2d 705, 67 Cal. Rptr. 347 (1968), and *People* v. *Stewart,* 267 Cal. App. 2d 366, 73 Cal. Rptr. 484 (1968), the court ruled that the requirements of *Miranda* were not met in this case.[2] The California Supreme Court denied a petition for hearing, with two justices dissenting. App. D to Pet. for Cert.

This Court has never indicated that the "rigidity" of *Miranda* extends to the precise formulation of the warnings given a criminal defendant. See, *e. g., United States* v. *Lamia,* 429 F. 2d 373, 375–376 (CA2), cert. denied, 400 U. S. 907 (1970). This Court and others *have* stressed as one virtue of *Miranda* the fact that the giving of the warnings obviates the need for a case-by-case inquiry into the actual voluntariness of the admissions of the accused. See *Fare* v. *Michael C.,* 442 U. S., at 718; *Harryman* v. *Estelle, supra.* Nothing in these observations suggests any desirable rigidity in the *form* of the required warnings.

Quite the contrary, *Miranda* itself indicated that no talismanic incantation was required to satisfy its strictures. The Court in that case stated that "[t]he warnings required and the waiver necessary in accordance with our opinion today

---

[2] Contrary to respondent's suggestion, it is clear that the decision below was based on federal law. The Court of Appeal stated that it was reversing and ordering a new trial "because of *Miranda* error." *Id.,* at 4.

are, *in the absence of a fully effective equivalent,* prerequisites to the admissibility of any statement made by a defendant." 384 U. S., at 476 (emphasis supplied). See also *id.,* at 479. Just last Term in considering when *Miranda* applied we noted that that decision announced procedural safeguards including "the now familiar *Miranda* warnings . . . *or their equivalent."* *Rhode Island* v. *Innis,* 446 U. S. 291, 297 (1980) (emphasis supplied).

Other courts considering the precise question presented by this case—whether a criminal defendant was adequately informed of his right to the presence of appointed counsel prior to and during interrogation—have not required a verbatim recital of the words of the *Miranda* opinion but rather have examined the warnings given to determine if the reference to the right to appointed counsel was linked with some future point in time after the police interrogation. In *United States* v. *Garcia,* 431 F. 2d 134 (CA9 1970) *(per curiam),* for example, the court found inadequate advice to the defendant that she could "have an attorney appointed to represent you when you first appear before the U. S. Commissioner or the Court." *People* v. *Bolinski, supra,* relied upon by the court below, is a case of this type. Two separate sets of warnings were ruled inadequate. In the first, the defendant was advised that *"if he was charged* . . . he would be appointed counsel." 260 Cal. App. 2d, at 718, 67 Cal. Rptr., at 355 (emphasis supplied). In the second, the defendant, then in Illinois and about to be moved to California, was advised that " 'the court would appoint [an attorney] *in Riverside County* [, California].' " *Id.,* at 723, 67 Cal. Rptr., at 359 (emphasis supplied). In both instances the reference to appointed counsel was linked to a future point in time after police interrogation, and therefore did not fully advise the suspect of his right to appointed counsel before such interrogation.

Here, in contrast, nothing in the warnings given respondent suggested any limitation on the right to the presence of

appointed counsel different from the clearly conveyed rights to a lawyer in general, including the right "to a lawyer before you are questioned, . . . while you are being questioned, and all during the questioning." App. A to Pet. for Cert. 9–10; ii. Like *United States* v. *Noa,* 443 F. 2d 144 (CA9 1971), where the warnings given were substantially similar to those given here and defendant's argument was the same as that adopted by the Court of Appeal, "[t]his is not a case in which the defendant was not informed of his right to the presence of an attorney during questioning . . . or in which the offer of an appointed attorney was associated with a future time in court . . . ." *Id.,* at 146.

It is clear that the police in this case fully conveyed to respondent his rights as required by *Miranda.* He was told of his right to have a lawyer present prior to and during interrogation, and his right to have a lawyer appointed at no cost if he could not afford one. These warnings conveyed to respondent his right to have a lawyer appointed if he could not afford one prior to and during interrogation. The Court of Appeal erred in holding that the warnings were inadequate simply because of the order in which they were given.[3]

---

[3] The dissent, arguing that the Court of Appeal opinion is unfairly criticized as requiring mimicking of *Miranda, post,* at 365–366, ignores substantial portions of the opinion below and substitutes arguments of its own for those articulated by the Court of Appeal. For example, the dissent makes no mention of the lower court's stress on the "precise requirements" of *Miranda* or its "rigidity" in this area, and ignores the portion of the opinion in which the court quotes from *Miranda* and then criticizes the officer for not repeating the exact language in advising respondent of his rights. See App. A to Pet. for Cert. 12–14. The Court of Appeal did conclude that respondent was not advised of his right to appointed counsel prior to and during interrogation, but this was *because* the officer did not parrot the language of *Miranda.* The more substantive reasons suggested by the dissent are implausible. The reference to "appointed" counsel has never been considered as suggesting that the availability of counsel was postponed, and Mrs. Prysock's off-the-record conversation was occasioned by her fear that waiving the right to counsel at interrogation

Because respondent was given the warnings required by *Miranda,* the decision of the California Court of Appeal to the contrary is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

*It is so ordered.*

JUSTICE STEVENS, with whom JUSTICE BRENNAN and JUSTICE MARSHALL join, dissenting.

A juvenile informed by police that he has a right to counsel may understand that right to include one or more of three options: (1) that he has a right to have a lawyer represent him if he or his parents are able and willing to hire one; (2) that, if he cannot afford to hire an attorney, he has a right to have a lawyer represent him without charge *at trial,* even if his parents are unwilling to spend money on his behalf; or (3) that, if he is unable to afford an attorney, he has a right to consult a lawyer without charge before he decides whether to talk to the police, even if his parents decline to pay for such legal representation.[1]  All three of these options are encompassed within the right to counsel possessed by a juvenile charged with a crime.  In this case, the first two options were explained to respondent, but the third was not.

In *Miranda* v. *Arizona,* 384 U. S. 436, this Court held that in order to protect an accused's privilege against self-incrimination, certain procedural safeguards must be employed.

---

would occasion a waiver of the right to counsel later in court, App. A to Pet. for Cert. 11, clearly indicating that the officer conveyed the right to counsel at interrogation.

[1] In his dissenting opinion in *Miranda* v. *Arizona,* 384 U. S. 436, 504, Justice Harlan accurately summarized the four essential elements of the warning that must be given a person in custody before he is questioned, "namely, that he has a right to remain silent, that anything he says may be used against him, that he has a right to have present an attorney during the questioning, and that if indigent he has a right to a lawyer without charge."

In particular, an individual taken into police custody and subjected to questioning must be given the *Miranda* warnings:

> "He must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." *Id.,* at 479.

See also *Rhode Island* v. *Innis,* 446 U. S. 291, 297. This formulation makes it clear beyond any doubt that an indigent accused has the right to the presence of an attorney and the right to have that attorney appointed to represent him prior to any questioning. While it is certainly true, as the Court emphasizes today, that the Federal Constitution does not require a "talismanic incantation" of the language of the *Miranda* opinion, *ante,* at 359, it is also indisputable that it requires that an accused be adequately informed of his right to have counsel appointed prior to any police questioning.

The California Court of Appeal in this case analyzed the warning given respondent, quoted *ante,* at 356–357, and concluded that he had not been adequately informed of this crucial right. The police sergeant informed respondent that he had the right to have counsel present during questioning and, after a brief interlude, informed him that he had the right to appointed counsel. See *ibid.* The Court of Appeal concluded that this warning was constitutionally inadequate, not because it deviated from the precise language of *Miranda,* but because

> "[u]nfortunately, the minor was not given the crucial information that the services of the free attorney were available *prior to the impending questioning."* App. A to Pet. for Cert. 15 (emphasis in original).[2]

---

[2] According to the Court of Appeal, the principal defect in the warning was that the police sergeant, in a "needless excursion," inserted a dis-

There can be no question that *Miranda* requires, as a matter of federal constitutional law, that an accused effectively be provided with this "crucial information" in some form. The Court's demonstration that the Constitution does not require that the precise language of *Miranda* be recited to an accused simply fails to come to terms with the express finding of the California Court of Appeal that respondent was not given this information. The warning recited by the police sergeant is sufficiently ambiguous on its face to provide adequate support for the California court's finding. That court's conclusion is at least reasonable, and is clearly not so patently erroneous as to warrant summary reversal.

The ambiguity in the warning given respondent is further demonstrated by the colloquy between the police sergeant and respondent's parents that occurred *after* respondent was told that he had the "right to have a lawyer appointed to represent you at no cost to yourself." Because lawyers are normally "appointed" by judges, and not by law enforcement officers, the reference to appointed counsel could reasonably have been understood to refer to trial counsel.[3] That is what

cussion of respondent's right to have his parents present between the description of the right to have counsel present during questioning and the description of the right of an indigent to have counsel appointed to represent him. See App. A to Pet. for Cert. 14–15. The subsequent untaped conversation "obfuscated, rather than clarified" the matter. *Id.*, at 15. The warnings given respondent were defective, not because "the officer did not parrot the language of *Miranda*," *ante*, at 361, n. 3, but because, in the form in which the warnings were given, they failed to convey the essential information required by *Miranda*.

[3] The fact that the reference also might have been understood to refer to the appointment of counsel prior to questioning does not undercut the Court of Appeal's conclusion. *Miranda* requires "meaningful advice to the unlettered and unlearned in language which he can comprehend and on which he can knowingly act." *Coyote* v. *United States*, 380 F. 2d 305, 308 (CA10 1967), cert. denied, 389 U. S. 992. Such meaningful advice is not provided by a warning which requires that an accused choose among

respondent's parents must have assumed, because their ensuing colloquy with the sergeant related to their option "to *hire* a lawyer." [4]

The judges on the California Court of Appeal and on the California Supreme Court, all of whom are presumably more familiar with the procedures followed by California police officers than we are, concluded that respondent was not adequately informed of his right to have a lawyer present without charge during the questioning. This Court is not at all fair to those judges when it construes their conscientious appraisal of a somewhat ambiguous record as requiring "a virtual incantation of the precise language contained in the

---

several reasonable interpretations of the language employed by a police officer in a custodial situation.

[4] The Court simply ignores the significance of the references to hiring a lawyer in the colloquy which it quotes *ante*, at 357–358, n. 1. The colloquy bears repeating:

"Sgt. Byrd: . . . Okay, Mrs. Prysock, you asked to get off the tape . . . . During that time you asked, decided you wanted some time to think about getting, *whether to hire a lawyer or not.*

"Mrs. P.: 'Cause I didn't understand it.

"Sgt. Byrd: And you have decided now that you want to go ahead and you do not wish a lawyer present at this time?

"Mrs. P.: That's right.

"Sgt. Byrd: And I have not persuaded you in any way, is that correct?

"Mrs. P.: No, you have not.

"Sgt. Byrd: And, Mr. Prysock is that correct that I have done nothing to persuade you *not to, to hire a lawyer* or to go on with this?

"Mr. P.: That's right.

"Sgt. Byrd: Okay, everything we're doing here is strictly in accordance with Randall and yourselves, is that correct?

"Mr. P.: That is correct.

"Sgt. Byrd: Okay. Uh, all right, Randy, I can't remember where I left off, I think I asked you, uh, with your legal rights in mind, do you wish to talk to me at this time? This is with everything I told you, all your legal rights, your right to an attorney, your right, and your right to remain silent, and all these, I mean do you wish to talk to me at this time about the case?

"Randall P.: Yes." App. A to Pet. for Cert. iii–iv (emphasis added).

*Miranda* opinion." *Ante,* at 355. It seems clear to me that it is this Court, rather than the state courts, that is guilty of attaching greater importance to the form of the *Miranda* ritual than to the substance of the message it is intended to convey.

I respectfully dissent.