STATE of Minnesota, Respondent,

v.

Robert Lee CRISLER, Appellant.

No. C9–88–936.

Supreme Court of Minnesota.

April 28, 1989.

Rehearing Denied May 22, 1989.

C. Paul Jones, Bradford Colbert, Asst. State Public Defender, Minneapolis, for appellant.

Hubert H. Humphrey, III, State Atty. Gen., St. Paul, Thomas L. Johnson, Hennepin County Atty., Minneapolis, for respondent.

SIMONETT, Justice.

The court of appeals affirmed the attempted first-degree murder conviction of defendant, Robert Lee Crisler. *State v. Crisler*, Case No. C9–88–936, 1989 WL 7572 (Minn.App., filed February 7, 1989) (unpublished opinion). We granted defendant's petition for review not because we disagree with the decision of the court of appeals but for the limited purpose of cautioning law enforcement officers about the importance of clearly and completely—and without deviation—giving all four warnings contained in the basic *Miranda* warning.

At 9:00 p.m. on October 2, 1986, someone using a semi-automatic weapon fired a number of bullets in rapid succession into the car of the victim, J.C., as the victim was getting into his car near Loring Park, in south Minneapolis. Two bullets hit the victim. Police recovered five bullets and one fragmented bullet from the car.

On March 9, 1987, defendant's estranged wife, S.C., called police and asked them to meet her at her residence. She said that she had just returned from a business trip and found her car stolen from the airport parking lot, with defendant's truck in its place, and she suspected that defendant was inside her house. When the officers entered the house they found defendant, defendant's son Robert Smith, and two guns nearby. The officers then went to defendant's house and picked up S.C.'s

daughter, whom defendant earlier had forcibly removed from S.C.'s house. With Smith's help, police also found other guns there, including silencers. Then, acting on information from Smith, S.C. and S.C.'s children, the officers went to a house in Burnsville and found two rifles, one a .9 millimeter Intratec-brand semi-automatic rifle, which resembles an UZI machinegun.

Defendant's son, Smith, was arrested along with defendant. Smith told the officers he was afraid of defendant because defendant had been involved in some shootings. Two days later Smith told police that on October 2, 1986, he had been with defendant when defendant shot at a man sitting in a car parked on a street near Loring Park. The description of the car fit that of the car driven by the victim.

Police then questioned defendant. During the interrogation defendant admitted that the .9 millimeter semi-automatic rifle found in Burnsville belonged to him.

Defendant was subsequently charged with and convicted of attempted first-degree murder. Evidence against him at trial included: (a) testimony of defendant's estranged wife's mother that defendant had said he believed that J.C., the victim, was a member of a gang of people harming his wife; (b) testimony by Smith concerning the shooting; (c) testimony that nine days after the shooting defendant told his wife's mother that he had taken care of J.C. and that J.C. would not bother anyone for quite awhile; (d) testimony that defendant had admitted to police that the semi-automatic rifle found in Burnsville was his; (e) independent testimony by a gun dealer that defendant bought the gun from him in September of 1986; and (f) evidence that the gun could not be excluded as the weapon used by J.C.'s assailant.

When police questioned defendant on March 11, two days after his arrest, they informed him that:

he had the right to remain silent, that he had the right to have an attorney; if he couldn't afford one then the court would appoint one for him. Anything he would say could and would be used in court as evidence against him.

Defendant contends that this warning was inadequate because it did not inform him that he had the right to have an attorney present before and during questioning and that the warning implied that an attorney would not be appointed for him until some future point in time.

In *Miranda v. Arizona,* 384 U.S. 436, 479, 86 S.Ct. 1602, 1630, 16 L.Ed.2d 694 (1966), the United States Supreme Court said that a person subjected to custodial interrogation must be given the *Miranda* warning:

He must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.

Subsequently, in *California v. Prysock,* 453 U.S. 355, 359–61, 101 S.Ct. 2806, 2809–10, 69 L.Ed.2d 696 (1981), the United States Supreme Court held that the *Miranda* warning need not take a rigid form so long as it conveys to the suspect that he has a right to remain silent, that anything he says can and will be used against him in court, that he has a right to have a lawyer present before and during interrogation, and that a lawyer will be appointed at no cost if he cannot afford one. The Court indicated, however, that a warning will be held defective if it implies to the suspect that any appointment of counsel will take place at some future point after interrogation. 453 U.S. at 360, 101 S.Ct. at 2809. *See also Eagan v. Duckworth,* 843 F.2d 1554 (7th Cir.), *cert. granted,* —— U.S. ——, 109 S.Ct. 218, 102 L.Ed.2d 209 (1988).

In two prior cases the court of appeals dealt with the issue of the adequacy of *Miranda* warnings: *State v. McBroom,* 394 N.W.2d 806, 812 (Minn.App.1986) (warning was inadequate in that it improperly linked the right to appointed counsel with some future point in time after police interrogation but that any defect in the warning was nonprejudicial because the statement given was an innocuous exculpatory statement that could not have played a

significant part in the verdict), *pet. for rev. denied* (Minn.1987); *State v. Butzin*, 404 N.W.2d 819, 825 (Minn.App.) (warning nearly identical to warning given in this case was not perfect but was adequate and did not mislead the defendant), *pet. for rev. denied* (Minn.1987).

In this case the court of appeals relied on *Butzin* in finding the warning to be adequate.

■ We need not decide the issue of the adequacy of the warning under *California v. Prysock*, 453 U.S. 355, 101 S.Ct. 2806, 69 L.Ed.2d 696 (1981). Even if the warning was defective, any error was harmless beyond a reasonable doubt because defendant's statement to the police merely admitted ownership of the gun in question, a fact the state was able to establish independently at trial through the testimony of the dealer who sold the gun to defendant.

■ However, while defendant himself is thus clearly not entitled to any relief on this ground, we take this occasion to caution law enforcement officers: a cryptic or paraphrased warning or a warning that deviates from the standard *Miranda* warning may later be determined by the trial court or a reviewing court to be inadequate or confusing and may result in either the pretrial suppression of any statement obtained[1] or the reversal of a conviction in the event the resulting statement was erroneously and prejudically admitted. Prudent police officers may want to carry a

"Miranda card" containing the standard individual *Miranda* warnings on one side and waiver questions on the other side.[2] The individual warnings are: (1) the suspect has the right to remain silent; (2) any statements made can and will be used against the suspect in a court of law; (3) the suspect has the right to talk to an attorney before being questioned and to have the attorney present during questioning by police; and (4) if unable to afford to hire an attorney, one will be appointed at no cost before any questioning if so desired. Police officers in this state who clearly and completely give a standard form *Miranda* warning containing these four carefully-worded individual warnings, or their equivalent, need not fear a later determination by this court that the warnings given were inadequate or misleading. Those officers who deviate from the standard form of warnings proceed at their own risk.

Affirmed.

**1.** The scope of the *Miranda* exclusionary rule is analyzed in *Oregon v. Elstad,* 470 U.S. 298, 304–09, 105 S.Ct. 1285, 1290–93, 84 L.Ed.2d 222 (1985), and *Michigan v. Tucker,* 417 U.S. 433, 445–46, 94 S.Ct. 2357, 2364–65, 41 L.Ed.2d 182 (1974).

**2.** *See, e.g.,* 7 H. McCarr, *Minnesota Practice—Criminal Law and Procedure* § 185 (1976), which contains the following form "Miranda card" originally prepared by then Hennepin County Attorney George M. Scott:

Front Side

WARNING TO SUSPECTS

If a suspect is detained and questioned, an officer must warn him as follows:

The constitution requires I inform you that:
(1) You have a right to remain silent.
(2) Anything you say will be used in court as evidence against you.

(3) You are entitled to talk to a lawyer now and have him present now or at any time during questioning.
(4) If you cannot afford a lawyer, one will be appointed for you without cost.

Back Side

WAIVER OF CONSTITUTIONAL RIGHTS

The burden is upon the officer to show that the waiver is made voluntarily, knowingly and intelligently.

Therefore ask:
(1) Do you understand these rights?
(2) Do you wish to talk to us at this time?
If the suspect indicates in any manner, prior to or during questioning that he wishes to remain silent, or that he wishes an attorney, the interrogation must cease, until permission is given by his attorney.

George M. Scott
Hennepin County Attorney