**Robert THERIOT, Petitioner,**

v.

**Daniel SENKOWSKI, Superintendent, Clinton Correctional Facility, Respondent.**

No. 91 Civ. 6046 (VLB).

United States District Court, S.D. New York.

Oct. 1, 1992.

---

Bridget R. Steller, District Attorney's Office, Poughkeepsie, N.Y., for respondent.

## MEMORANDUM ORDER

VINCENT L. BRODERICK, Senior District Judge.

This is a petition for habeas corpus challenging petitioner's New York State court conviction on January 20, 1978 for murder and conspiracy, upheld on state appellate review in *People v. Theriot,* 83 A.D.2d 796, 441 N.Y.S.2d 759 (2d Dept.1981), *leave to appeal to Court of Appeals denied,* 54 N.Y.2d 767, 443 N.Y.S.2d 1058, 426 N.E.2d 782 (1981).

Petitioner filed an earlier petition in 1988, 88 Civ. 7467 (VLB) and thereafter obtained permission to dismiss the petition without prejudice on November 16, 1990. After unsuccessful intervening state court applications, petitioner filed his second application for the writ in this court on June 16, 1991. Accepting the facts as set forth in the petition as true, I conclude that no basis for federal habeas corpus relief has been shown, and deny the petition in its entirety.

Petitioner's first claim is that telling arresting officers that "he had no money, and he didn't want his family to be stuck, or to have to pay any attorney fees" (petition at 10) made subsequent statements inadmissible even though petitioner was told "that if he wants an attorney and is unable to afford one, the court would appoint one for him" (petition at 12). This

argument is unrealistic, since the information conceded1y given to petitioner dealt directly with the concern expressed, alerting petitioner that he could insist on counsel despite lack of funds. The purpose of the *Miranda* warnings with respect to counsel is to insure that arrestees understand that they have the right to consult counsel if desired before being interrogated—a purpose which was obviously fulfilled here. See *United States v. Lux,* 905 F.2d 1379 (10th Cir.1990).

■ Second, petitioner argues that he was not specifically notified that counsel could be present during any interrogation. A colloquy took place in the context of the explanation of petitioner's rights during the arrest, and that colloquy makes it clear that petitioner was aware of the significance of *Miranda* warnings to his situation. Use of precise language taken from *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) is not required. *California v. Prysock,* 453 U.S. 355, 101 S.Ct. 2806, 69 L.Ed.2d 696 (1981); *Duckworth v. Eagan,* 492 U.S. 195, 202, 109 S.Ct. 2875, 2879, 106 L.Ed.2d 166 (1989).

■ Warnings given in the language prescribed by *Miranda* are not independently required by the Constitution, but represent a means of reducing the incidence of abusive custodial interrogation, likely to result in confessions that are both unreliable and secured by independently objectionable methods. There is nothing here which suggests to me that the core language of *Miranda* was omitted or not understood, that petitioner was misled or not informed of his rights, or that the

ultimate objectives of *Miranda* were in any way compromised.

Any possibility of misunderstanding on the part of petitioner was reduced, because he was "reminded" of his rights according (petition at 3) and "again advised of his rights" (petition at 4). This also tends to confirm that no effort to bypass the *Miranda* warning was involved.

■ Petitioner suggests that due to reading difficulties and low intelligence, he did not understand his *Miranda* rights, and that he was not given a separate warning that counsel could be present during the interrogation. These suggestions have no merit. Petitioner was able to interrogate the arresting officers concerning the dilemma created by his desire not to incur legal fees; he was notified that the court would appoint an attorney for him if he did not retain one. That petitioner understood his predicament and was able to make intelligent decisions based on comprehension of what he was told is confirmed by his ability to give an exculpatory account of his activities (petition at 4).

■ The right of a suspect to speak is as important as his right to remain silent, since the former is important to establish innocence and vouchsafed by the First Amendment. Moreover, the police can and do draw adverse inferences from silence, and their doing so in their own work has never been considered violative of the privilege against compelled self-incrimination.[1]

Suspects may decide to talk with police for many reasons. Among these reasons is the possibility, which petitioner sought to take advantage of here by giving an excul-

---

1. Adverse inferences from silence are permitted even in judicial contexts in civil cases, e.g., *Brink's, Inc. v. City of New York,* 717 F.2d 700 (2d Cir.1983), and in limited circumstances in criminal contexts. See generally *Wainwright v. Greenfield,* 474 U.S. 284, 106 S.Ct. 634, 88 L.Ed.2d 623 (1986); *Fletcher v. Weir,* 455 U.S. 603, 102 S.Ct. 1309, 71 L.Ed.2d 490 (1982); *Anderson v. Charles,* 447 U.S. 404, 408, 100 S.Ct. 2180, 2182, 65 L.Ed.2d 222 (1980); *South Dakota v. Neville,* 459 U.S. 553, 565, 103 S.Ct. 916, 923, 74 L.Ed.2d 748 (1983); *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976); *United States v. Hale,* 422 U.S. 171, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975); *Grancorvitz v. Franklin,*

890 F.2d 34, 41–42 & n 13 (7th Cir.1989); *Passman v. Blackburn,* 797 F.2d 1335, 3545–46 (5th Cir.1986). Procedural approaches which will best fulfill constitutional mandates in this area are in the process of continuing development. See Friendly, *The Fifth Amendment Tomorrow,* 37 U.Cinc.L.Rev. 671 (1986); Traynor, *Devils of Due Process in Criminal Detection,* 16 Cath U.L.Rev. 1 (1966), also in 21 Record of The Ass'n of the Bar of the City of New York 1205 (1966); *Measures Relating to Organized Crime: Hearings before the Subcommittee on Criminal Laws & Procedure,* Senate Judiciary Committee, 91st Cong., 1st Sess. 212–29 (1969).

patory account of his activities, that the police will be convinced correctly or incorrectly that the speaker is not implicated in criminal activities. It would be inappropriate to hold that statements made by a suspect who decides to speak may be used for, but not against, the speaker. It would be even more inappropriate to introduce as a touchstone for decision the relative verbal sophistication or lack of sophistication of the speaker. This would create an imbalance encouraging suspects to feign such lack of sophistication; law enforcement would be impeded, and there would be no gain for any other legitimate objective.

 Rule 9(a) of the Rules Governing Section 2254 Proceedings in the United States District Courts, permitting dismissal for laches, also justifies dismissal in light of the combination of the nature of the claim made, the length of the delay, and its deliberate nature. The lapse of 13 years, particularly where an intervening 1988 petition was filed and voluntarily dismissed, is significant where the basis for the petition rests not on events at trial, but on pretrial events which could be established with far greater precision were the recollections of those involved still fresh. Even if not sufficient by itself to support dismissal, the delay in this instance supports an adverse inference as to the merits of the claims, and to offset the difficulty confronting the state in furnishing evidence concerning the *Miranda* warnings and surrounding circumstances at the time of petitioner's arrest 13 years ago.

To the extent the 1988 petition was dismissed to permit prior state applications, they could and should have been filed more promptly after conviction. No excuse for not doing so has been tendered.

SO ORDERED.