This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Defendant-Appellant Anthony White has appealed from a judgment of conviction and sentence from the Summit County Court of Common Pleas for aggravated robbery and murder, with a firearm specification attached to each conviction. This Court affirms.
 I {¶ 2} In August 2001, Lloyd Cole ("the victim") was shot and killed in the vicinity of 1128 Becker Lane. During the course of the investigation, police began to suspect that Appellant had some knowledge of or involvement in the crime. Several weeks after the shooting, police apprehended Appellant and brought him to the Akron Police Department's detective bureau for questioning. During the interview with detectives, Appellant confessed that he was attempting to rob the victim after a drug transaction, and that the victim was killed during a struggle for Appellant's gun.
 {¶ 3} Shortly thereafter, the Summit County Grand Jury returned an indictment charging Appellant with aggravated murder, in violation of R.C. 2903.01(B), and aggravated robbery, in violation of R.C.2911.01(A)(3). The indictment included a firearm specification with respect to each count, pursuant to R.C 2941.145. Appellant entered a plea of not guilty to the charges in the indictment, and filed a motion to suppress the incriminating statements he gave to detectives during the interview. In his motion, Appellant argued that the detectives failed to properly advise Appellant of his Miranda rights, and argued that any waiver of his rights was not knowing and voluntary. After a hearing, the court entered an order denying Appellant's motion to suppress.
 {¶ 4} In February 2002, the grand jury returned a supplemental indictment charging Appellant with one count of murder, in violation of R.C. 2903.02(B), with a firearm specification pursuant to R.C. 2941.145. Appellant entered a plea of not guilty to the additional charges, and the matter proceeded to trial before a jury. At trial, Appellant denied that the gun discharged during a robbery attempt; rather, he testified that the gun accidentally went off when a passenger in the victim's car tried to take Appellant's gun while Appellant and the victim executed a drug transaction.
 {¶ 5} At the conclusion of the testimony, Appellant requested a jury instruction on involuntary manslaughter. Appellant argued that involuntary manslaughter was a lesser included offense of the charges of aggravated murder and murder. After a conference with counsel in chambers, the court denied the motion.
 {¶ 6} The jury found Appellant not guilty of aggravated murder, but guilty of murder and aggravated robbery, and guilty of the firearm specifications attached to each charge. Appellant was sentenced to ten years imprisonment on the aggravated robbery conviction, and three years on the firearm specification related to that charge. The court did not impose sentence on Appellant for the second firearm specification, having merged both specifications for purposes of sentencing, and sentenced Appellant to fifteen years to life on the murder conviction. The court ordered Appellant to serve the sentences for the firearm specification consecutively with the sentence for aggravated robbery, and the sentence for murder concurrently with the sentence for aggravated robbery. Appellant has timely appealed, asserting two assignments of error.
 II Assignment of Error Number One {¶ 7} "THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS HIS ALLEGED CONFESSION AS THERE WAS INSUFFICIENCE [SIC] EVIDENCE PRESENTED TO THE COURT TO ESTABLISH THAT APPELLANT WAS GIVEN HIS FULL MIRANDA RIGHTS AND THAT HE THEREAFTER KNOWINGLY AND VOLUNTARILY WAIVED THOSE RIGHTS."
 {¶ 8} In his first assignment of error, Appellant has argued that the trial court erred in denying his motion to suppress the statement he gave to detectives in which he admitted that the victim was shot while Appellant was trying to rob him. Specifically, Appellant has contended that the trial court erred in finding that the detectives adequately advised Appellant of his Miranda rights prior to his confession.
 {¶ 9} In reviewing a trial court's ruling on a motion to suppress evidence, an appellate court engages in a two-step inquiry. State v.Evans (2001), 144 Ohio App.3d 539, 549, appeal not allowed (2001),93 Ohio St.3d 1473. First, the appellate court reviews the trial court's findings of fact only for clear error. Id., citing Ornelas v.United States (1996), 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911. Accordingly, we will not disturb the trial court's factual findings if some competent, credible evidence to support them appears in the record.State v. Searls (1997), 118 Ohio App.3d 739, 741. "Then, we engage in ade novo review, without deference to the trial court's conclusions, as to whether those properly supported facts meet the applicable legal standards." Evans, 144 Ohio App.3d 549, citing Ornelas, 517 U.S. 699.
 {¶ 10} The Fifth Amendment to the United States Constitution provides persons with a privilege against compelled self-incrimination. The prosecution may not use statements that are the result of custodial interrogation of a defendant unless the prosecution demonstrates the use of procedural safeguards effective to secure this Fifth Amendment privilege. Miranda v. Arizona (1966), 384 U.S. 436, 444, 86 S.Ct. 1602,16 L.Ed.2d 694. Specifically, an individual must be advised prior to custodial interrogation "that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." Id. These rights may be waived, however, provided the defendant makes the waiver knowingly, intelligently, and voluntarily. Id. The prosecution bears the burden of establishing, by a preponderance of the evidence, that the defendant knowingly, intelligently, and voluntarily waived his Miranda rights based on the totality of the circumstances surrounding the investigation. State v. Gumm (1995),73 Ohio St.3d 413, 429, certiorari denied (1996), 516 U.S. 1177,116 S.Ct. 1275, 134 L.Ed.2d 221.
 {¶ 11} In its order denying Appellant's motion to suppress, the trial court made detailed findings of fact. In particular, the court found that "[p]rior to commencing questioning, Detective Morrison read [Appellant] his miranda [sic] rights. Each right was read and acknowledged by [Appellant] to be understood. At no time did he refuse to talk to the detectives or request counsel." The court concluded its order by reiterating that "[c]onsidering the totality of the circumstances in this case, the Court finds * * * that all questioning took place only after proper mirandization."
 {¶ 12} Our review of the record demonstrates that competent, credible evidence supports the trial court's finding that the police provided Appellant with the warnings required by Miranda. At the suppression hearing, Detective Richard Morrison testified that he and Detective Michael Shaeffer interviewed Appellant on October 5, 2001. With regard to the detectives' instruction of Miranda rights, the following exchange took place at the hearing between the prosecutor and Detective Morrison:
 {¶ 13} "Q. At any time in that interview room did you advise [Appellant] of his constitutional rights under Miranda?
 {¶ 14} "A. We read — I personally read his rights with Detective Shaeffer witnessing it at the beginning.
 {¶ 15} "Q. Okay. And how did you read those rights to him?
 {¶ 16} "A. From a Miranda card that we have.
 {¶ 17} "Q. And is that the card that you normally carry with you, that has his rights in total?
 {¶ 18} "A. It has his rights in total and I usually keep it in my desk.
 {¶ 19} "Q. Do you have that on you today?
 {¶ 20} "A. No, I didn't bring it.
 {¶ 21} "Q. What did you advise him?
 {¶ 22} "A. Basically what was on the card. Exactly what was on the card, I read verbatim.
 {¶ 23} "Q. You advised him he had a right to remain silent?
 {¶ 24} "A. Anything that he says will be used against him in a court of law, he has a right to have an attorney, even if he has an attorney, he has a right to quit answering and basically what exactly Miranda says."
 {¶ 25} When Appellant's counsel asked on cross-examination whether the detectives ever Mirandized Appellant, Detective Morrison repeated: "[Appellant] was Mirandized the moment we walked in." Later on cross-examination, Detective Morrison testified that "[e]verything was talked about after Miranda, Miranda was the first thing done."
 {¶ 26} Detective Shaeffer also testified at the hearing, at which the following colloquy took place between the detective and Appellant's counsel:
 {¶ 27} "Q. Who read the Miranda rights?
 {¶ 28} "A. Detective Morrison.
 {¶ 29} "Q. How did he go about doing that?
 {¶ 30} "A. He pulled out a little card that has the Miranda rights and read them to him and [Appellant] agreed to talk to us.
 {¶ 31} "Q. Were there questions asked of [Appellant] prior to that?
 {¶ 32} "A. No."
 {¶ 33} Detective Shaeffer later reiterated that "[w]hen we first went in we gave him Miranda[.]"
 {¶ 34} Both Detective Morrison and Detective Shaeffer testified that they did not advise Appellant of his Miranda rights a second time before asking him to repeat his statement so the detectives could record it on an audio tape. However, both detectives testified that the beginning of the recorded statement includes the detectives asking Appellant whether they advised him of his Miranda rights. Both detectives also testified that Appellant agreed that they so advised him, and he was nonetheless willing to talk to the detectives.
 {¶ 35} Appellant has argued that, in spite of the foregoing testimony, the evidence adduced at the hearing was insufficient to demonstrate that he was afforded the procedural safeguards required byMiranda. Appellant has argued that the detectives did not explicitly testify that Appellant was advised of his rights to remain silent, to have an attorney present during the interrogation, and to have an attorney appointed for him if he could not afford to retain counsel. Appellant has also pointed out that the Miranda card, which the detectives testified contained the rights read to Appellant by Detective Morrison, was never introduced at the hearing. According to Appellant, therefore, the court could not determine whether the "missing" card fully and accurately contained all of Appellant's rights under Miranda, as Detective Morrison testified.
 {¶ 36} "The United States Supreme Court has often indicated that there is no rigid rule requiring that the content of the Miranda warnings given to an accused prior to police interrogations be a virtual incantation of the precise language contained in the Miranda opinion."State v. Dailey (1990), 53 Ohio St.3d 88, 90, citing California v.Prysock (1981), 453 U.S. 355, 361, 101 S.Ct. 2806, 69 L.Ed.2d 696. Rather, "the warnings required by Miranda are satisfied where `prior to the initiation of questioning, * * * [the police] must fully apprise the suspect of the State's intention to use his statements to secure a conviction, and must inform him of his rights to remain silent and to have counsel present * * * if [he] so desires.'" (Alterations sic; internal quotations omitted.) Dailey, 53 Ohio St.3d at 90, quoting Moranv. Burbine (1986), 475 U.S. 412, 420, 106 S.Ct. 1135, 89 L.Ed.2d 410.
 {¶ 37} In the case sub judice, the detectives repeatedly testified that Appellant was fully Mirandized, and that his rights were read from a standard card containing the Miranda rights "in total." Under the totality of the circumstances, we conclude that the testimony by the detectives constitutes competent, credible evidence to support the trial court's finding that Appellant was properly administered his Miranda rights by Detective Morrison. Having been adequately apprised of his rights, Appellant knowingly, intelligently, and voluntarily waived them, and willingly provided the recorded statement to the police. Appellant's first assignment of error is without merit.
 Assignment of Error Number Two {¶ 38} "THE TRIAL COURT ERRED IN DENYING APPELLANT'S REQUEST FOR A JURY INSTRUCTION ON THE OFFENSE OF INVOLUNTARY MANSLAUGHTER."
 {¶ 39} In his second assignment of error, Appellant has contended that the trial court erred in denying his request for a jury instruction on the offense of involuntary manslaughter. Appellant has contended that involuntary manslaughter is a lesser included offense of aggravated murder, and the trial court should therefore have instructed the jury on the lesser included offense.
 {¶ 40} Assuming arguendo that involuntary manslaughter, as set forth at R.C. 2903.04(A), is a lesser included offense of aggravated murder, proscribed by R.C. 2903.01(B), any error by the trial court in failing to instruct the jury on involuntary manslaughter is harmless. Pursuant to Crim.R. 52(A), "any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." In the case sub judice, the jury found Appellant not guilty of aggravated murder; he was therefore not prejudiced by the failure of the court to instruct the jury on a lesser included offense of that crime. As Appellant has not argued that the jury should have been instructed on involuntary manslaughter as a lesser included offense of murder as proscribed by R.C. 2903.02(B), we will not raise that issue sua sponte or engage in an analysis thereof. Appellant's second assignment of error must fail.
 III {¶ 41} Appellant's assignments of error are overruled. The judgment of the trial court is affirmed.
CARR, P.J., BATCHELDER, J. CONCUR.