*1024 KOZINSKI, Chief Judge,
concurring in the result:
Not for the first or last time, we’re asked to consider what it means for an opinion of a state court to be “unreasonable” under 28 U.S.C. § 2254(d). I write separately because I believe that deference is neither a blindfold nor a bandana.
The state court may well have been wrong to find Doody’s confession voluntary. Doody, a teenager, was isolated from his friends and family and interrogated for over twelve hours. Working in shifts, police kept Doody awake overnight. They employed many of the psychological techniques that troubled the Supreme Court in Miranda v. Arizona:
To be alone with the subject is essential to prevent distraction and to deprive him of any outside support.... He merely confirms the preconceived story the police seek to have him describe. Patience and persistence, at times relentless questioning, are employed. To obtain a confession, the interrogator must “patiently maneuver himself or his quarry into a position from which the desired objective may be attained.” When normal procedures fail to produce the needed result, the police may resort to deceptive stratagems such as giving false legal advice. It is important to keep the subject off balance.... The police then persuade, trick, or cajole him out of exercising his constitutional rights.
384 U.S. 436, 455, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The police pled with Doody, over and over, to “tell me,” “trust me” and “[t]alk to me so I understand.” They ordered him: “You have to tell us.” They warned him: “There are statements, I’d say damaging statements toward you and its gonna, and its gonna pile up Jon, it’s gonna be so deep.” They said they knew “you’ve got some tremendous answers up in that, that head of yours” because they “could just tell it in your eyes,” and they lied to him: “I probably won’t ask you a question, that I don’t already know the answer.” They promised him, falsely, that his words were “between us,” and that “[wjhat you tell us right now, is gonna stay right here.” Doody was silent for long periods of questioning, and he ended the interrogation in tears.
But that’s not the only way to read the record. As the state court noted, Doody was nearly eighteen, maintained good grades and “participated in his high school honor guard.” State v. Doody, 187 Ariz. 363, 930 P.2d 440, 445 (Ariz.Ct.App.1996). The officers employed a “courteous, almost pleading style of questioning” and “testified at the suppression hearing that Doody remained alert and responsive throughout the interrogation.” Id. at 446. The officers also “offered Doody food and drinks and accommodated his requests to use the restroom.” Id. During his long periods of silence, Doody may have been thinking up a story that would fit the evidence against him but also keep him out of trouble. Indeed, when Doody confessed, he gave a relatively exculpatory account in which he was outside the temple at the time of the killing. He started crying, he said, because the police “came out and ma[d]e it sound like [they] didn’t believe” that version of events. That’s the statement of a person who had staked his future on a half-truth, as opposed to someone whose will was overborne.
I doubt anyone but Doody will ever know with certainty whether his confession was voluntary, and perhaps not even he. After all, “Difficulties of proof and subtleties of interrogation ... [make] it impossible in most cases for the judiciary to decide with confidence whether [a] defendant ... voluntarily confessed.” New York v. Quarles, 467 U.S. 649, 683, 104 S.Ct. 2626, 81 L.Ed.2d 550 (1984) (Marshall, J„ dis *1025 senting). The majority spins a good yarn, but the state court also told a good story. Even federal judges can’t read Doody’s mind or travel back in time. And, as the Supreme Court has told us, “The more general the rule, the more leeway courts have in reaching outcomes.” Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004). This is precisely the kind of debatable application of a “general standard” where finality and respect for the independent judgment of the state courts counsels the highest deference on federal habeas review. See Knowles v. Mirzayance, 556 U.S. 111, 129 S.Ct. 1411, 1420, 173 L.Ed.2d 251 (2009); see also Harrington v. Richter, — U.S.-, 131 S.Ct. 770, 786, 178 L.Ed.2d 624 (2011). I would therefore let stand the state court’s finding that the confession was voluntary.
But, unlike voluntariness, “a warning is a clearcut fact.” Miranda, 384 U.S. at 469, 86 S.Ct. 1602. Voluntariness asks courts to speculate about intangibles, but Miranda seeks “ascertainable assurance that the accused was aware” of his rights. Id. at 472, 86 S.Ct. 1602 (emphasis added). It therefore provides a “clear, easily administered device for ensuring that criminal suspects understand their constitutional rights,” Quarles, 467 U.S. at 683, 104 S.Ct. 2626(Marshall, J., dissenting), and experience has proved that its bright line rule is manageable “for law enforcement officers to conform to, and for courts to apply in a consistent manner,” Dickerson v. United States, 530 U.S. 428, 444, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000). Accordingly, when a state court asks whether a suspect was adequately warned, “[ajpplications of the rule may be plainly correct or incorrect.” Yarborough, 541 U.S. at 664, 124 S.Ct. 2140. We need not defer to plainly incorrect applications.
From tapes of the interrogation, we know exactly what the police said when informing Doody of his right to an attorney.
[Y]ou have the right to have an attorney present prior to and during questioning, and what that means that if you want one, you’re allowed to have a lawyer here before and during you know my questions to you, okay. And then an attorney is a lawyer who will speak for you and help you concerning the crime or any kind of offense that ah we think that you or somebody else is involved in, if you were involved in it, okay. Again, it not necessarily mean that you are involved, but if you were, then that’s what that would apply to okay, (emphasis added)
We can listen as the officer recites the familiar words: “[Y]ou have the right to have an attorney.” And we can listen as he provides a generic and inoffensive definition of “attorney”: “[A] lawyer who will speak for you and help you.” And, finally, we can observe in slow motion as the officer’s Miranda warnings fly off the rails: “[I]f you were involved in it, okay. Again, it not necessarily mean that you are involved, but if you were, then that’s what that would apply to okay.” Those words are undisputed facts.
Faced with those facts, the Arizona Court of Appeals found that Doody’s rights were read to him “in a clear and understandable manner” and that the “officers read each warning from a standard juvenile form and provided additional explanations as appropriate.” Doody, 930 P.2d at 449. The dissent tells us that the state court’s characterization of the officer’s words was not unreasonable because the officer made Doody aware that he was “faced with a phase of the adversary system.” Dissent at 1040 (quoting Miranda, 384 U.S. at 469, 86 S.Ct. 1602). I don’t see anything so benign lurking in the officer’s words. Here they are again:
*1026 [A]n attorney is a lawyer who will speak for you and help you concerning the crime or any kind of offense that ah we think that you or somebody else is involved in, if you were involved in it, okay. Again, it not necessarily mean that you are involved, but if you were, then that’s what that would apply to okay.
The officer did say something about the adversary system: That a lawyer will help you “if you were involved” in criminal activity, and that the right to an attorney only applies to you if “you were involved.” This, of course, is not true: The innocent, no less than the guilty, are entitled to a lawyer. Or, in Officer Riley’s peculiar argot: “Whether you were involved or not, then that’s what that would apply to okay.”
The dissent admits that the officer’s words “could be construed” to say you only get a lawyer if you’re guilty. Dissent at 1039. This pretty much gives up the ship, as warnings that “could” be construed in such a manner can’t possibly be “clear,” “understandable” or “appropriate.” It is established beyond doubt that “an individual held for interrogation must be clearly informed that he has the right to consult with a lawyer,” Miranda, 384 U.S. at 471, 86 S.Ct. 1602 (emphasis added), and that warnings must “apprise the accused of his right to have an attorney present,” Duckworth v. Eagan, 492 U.S. 195, 205, 109 S.Ct. 2875, 106 L.Ed.2d 166 (1989). The whole point of Miranda is to provide “assurance that the accused was aware” of his rights. 384 U.S. at 472, 86 S.Ct. 1602. There’s no such assurance when a warning “could” be interpreted to say the polar opposite of what Miranda requires.
The warning given in this case was far worse than no warning at all. At least an un-warned suspect may know his rights without being told about them; many non-lawyers watch Cops and Law and Order. But a non-lawyer who knows about the right to counsel, and who might even be willing to invoke it without a warning, may well hesitate to ask for a lawyer after being told that the right would only apply “if you were involved.” After all, a request for a lawyer would be an admission that “you were involved,” as only suspects who knowingly fall into that category would have a right to ask for one. Upholding such a warning would contravene the very core of the rule established by Miranda: When the Court prescribed words that would make suspects aware of their rights, it certainly did not intend to approve warnings that would throw those rights into doubt and make invocation of the right to counsel even less likely than it is already.
Here’s a simple test of the warning’s adequacy: Suppose everything the officer said had been printed on a standardized waiver produced by the state, without all the “colloquial filler” the dissent thinks we should ignore. Dissent at 1039. Since this was Arizona, the birthplace of Miranda^ maybe police felt they were entitled to improve on the Supreme Court’s work; call it Miranda 2.0:
You have the right to an attorney present prior to and during questioning. An attorney is a lawyer who will speak for you and help you concerning the crime, if you were involved in it. It doesn’t necessarily mean you are involved, but if you were, then that right would apply to you. Do you understand this right? Yes_No_
Now suppose Doody had initialed such a form. Would we uphold the warning just because it contained the magic words, “You have the right to an attorney”?
Although the officer spoke the words instead of printing them on paper, this is a distinction without a difference. As the state court acknowledged, the officer’s statements were made at the same time *1027 that Doody read his written warnings and were offered as “explanations” of the rights Doody agreed to waive. Doody, 930 P.2d at 449. If Miranda 2.0 doesn’t pass muster, neither does the warning in this case.
The Supreme Court’s recent decision in Florida v. Powell, — U.S.-, 130 S.Ct. 1195, 175 L.Ed.2d 1009 (2010), doesn’t change this analysis, as the opinion reaffirms the standard for determining Miranda compliance that its prior cases had established. Id. at 1204(citing Duckworth, 492 U.S. at 204-05, 109 S.Ct. 2875; California v. Prysock, 453 U.S. 355, 360-61, 101 S.Ct. 2806, 69 L.Ed.2d 696 (1981) (per curiam)). Nor do the facts in Powell have any significant bearing on this case. Tampa police read Powell the following statement to serve as his Miranda warnings:
You have the right to remain silent. If you give up the right to remain silent, anything you say can be used against you in court. You have the right to talk to a lawyer before answering any of our questions. If you cannot afford to hire a lawyer, one will be appointed for you without cost and before any questioning. You have the right to use any of these rights at any time you want during this interview.
Powell, 130 S.Ct. at 1200. The Florida Supreme Court found this statement misleading because it suggested that Powell only had a right to consult with an attorney before, and not throughout, his interrogation. The Supreme Court reversed because “[njothing in the words used indicated that counsel’s presence would be restricted after the questioning commenced.” Id. at 1205. The Court found that the final warning, ‘You have the right to use any of these rights at any time you want during this interview,” cured whatever misleading effect the other statements had. Although the warnings were “not the clearest possible formulation of Miranda’s right-to-counsel advisement,” the Court upheld them as “sufficiently comprehensive and comprehensible when given a commonsense reading.” Id.
Not so here. The Miranda warnings Doody was given were affirmatively misleading. Doody wouldn’t have had to “imagine” a “counterintuitive” or “unlikely” scenario to think counsel was only available to individuals actually involved in a crime. Id. And, unlike Powell, no other part of the officer’s warnings corrected the error. The officer’s statement simply didn’t communicate Miranda’s “essential message,” as Powell requires. Id. at 1206.
Powell isn’t an AEDPA case and doesn’t provide any guidance on how much deference we owe to state courts. Even under AEDPA, however, it’s not possible to bend the record far enough to sustain the state court’s opinion, if habeas corpus is to “stand[ ] as a safeguard against imprisonment of those held in violation of the law.” Richter, 131 S.Ct. at 780. The dissent is correct that the Supreme Court has repeatedly overturned this court for insufficient deference. Dissent at 1029-30. But the Court has also said that AEDPA’s “standard is demanding but not insatiable” and that “ ‘deference does not by definition preclude relief.’ ” Miller-El v. Dretke, 545 U.S. 231, 240, 125 S.Ct. 2317, 162 L.Ed.2d 196 (2005) (alteration omitted) (quoting Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003)). In Anderson v. Terhune, we found that AEDPA did not require us to manufacture uncertainty and ambiguity as to whether a suspect invoked his right to silence when he said, “I plead the Fifth.” 516 F.3d 781, 787 (9th Cir.2008) (en banc); see also Hart v. Attorney Gen. of Fla., 323 F.3d 884, 894 (11th Cir.2003). Comity doesn’t mean being comatose. We can’t ignore the fact that the state court in this case held up the officer’s language as a model application of *1028 Miranda even though his words were misleading at best and flat wrong at worst— not just “less-than-accurate,” as the dissent concludes. Dissent at 1038-39.
We defer when state courts reasonably adjudicate claims of federal right, even if we think they’re wrong. Richter, 131 S.Ct. at 786. But where, as here, a state court doesn’t act reasonably, deference comes to an end. After all, we retain “authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court’s decision conflicts with” Supreme Court precedent. Id. Yes, the standard is a “difficult” one to meet, id., but difficult doesn’t mean impossible. When police take a butcher knife to Miranda, a decision so “embedded in routine police practice to the point where the warnings have become part of our national culture,” a federal court can’t sit idly by. Dickerson, 530 U.S. at 443, 120 S.Ct. 2326.
The dissent offers a number of other arguments for denying relief, even if the warnings weren’t “clear,” “understandable” or “appropriate.” See Dissent at 1038-41. For example, the dissent points to evidence the state court considered that “Doody exhibited no signs of doubt or confusion.” Dissent at 1040 (internal quotation marks omitted). Maybe Doody wasn’t listening to what the officer said, or maybe he didn’t believe it. But that’s entirely irrelevant. Miranda establishes an objective test. We can’t uphold defective warnings because they might have been inadvertently successful, just as we can’t disregard a properly administered warning because a particular suspect might have misunderstood.
Nor did anything in the Supreme Court’s opinion in Duckworth cast doubt on the relevant legal principles. See Dissent at 1036-37, 1038-40. In that case, police told a suspect that they had “no way of giving you a lawyer, but one will be appointed for you, if you wish, if and when you go to court” and that “[y]ou also have the right to stop answering at any time until you’ve talked to a lawyer.” Duckworth, 492 U.S. at 198, 109 S.Ct. 2875 (emphasis omitted). The Court of Appeals thought this wrongly implied that the right to counsel did not apply before a suspect went to court, but the Supreme Court held that the Court of Appeals had “misapprehended the effect” of the language. Id. at 203, 109 S.Ct. 2875. The Court emphasized that the warning was entirely true and “accurately described the procedure for the appointment of counsel in Indiana,” according to which invocation of the right to counsel would require police to cease questioning altogether unless the suspect paid for his own lawyer. Id. at 204, 109 S.Ct. 2875. Nothing in the Court’s opinion suggested that officers are permitted to make untrue statements that contradict the warnings required by Miranda. To the contrary, the Court reaffirmed that warnings must adequately “apprise the accused of his right to have an attorney present.” Id. at 205, 109 S.Ct. 2875.
Finally, the dissent would deny relief because “Doody was simultaneously looking at a written form that clearly laid out the warnings,” and the Supreme Court has not “indicated what effect simultaneously acknowledged written warnings might have when the oral warnings are unclear.” Dissent at 1039, 1040. It would be unreasonable to think that the written warnings remedied the harm. They said:
You have the right to have an attorney present prior to and during questioning. (This means, if you want one, you are allowed to have a lawyer here before and during my questions to you. An attorney is a lawyer who will speak for you and help you concerning the crime which we think you have done.)
*1029 There’s nothing wrong with the written warnings, taken in isolation, but Doody read the warnings at the same time the officer offered his “explanation” of the scope of the right to counsel. The written warnings don’t say that the right to counsel applies to the innocent as well as the guilty, and they don’t contradict the officer’s statement that the right would apply only if Doody was “involved.” Assessing the Miranda warnings “in their totality” and “[i]n context,” a reasonable suspect would assume that the oral warnings clarified the written ones. Powell, 130 S.Ct. at 1204, 1205; Dissent at 5871. The written warnings cannot provide the “assurance” that Doody was aware of his rights that Miranda requires.
For over forty years, it has been clearly established that statements made during custodial interrogation cannot be admitted into evidence unless the defendant was adequately warned of his rights and the consequences of waiver. See Miranda, 384 U.S. at 479, 86 S.Ct. 1602. The warnings required by Miranda are brief and very simple; most people — and certainly all police — know them by heart. It’s not too much to ask that police recite them as prescribed by the Supreme Court, and not augment them in a way that will obscure their meaning and undermine their effect.
Thanks to Miranda’s simple rule, this is a simple case. We’ll never know whether Doody’s statements were voluntary, but it’s plain to see that he wasn’t properly read his rights. We must grant his petition on that ground alone.