[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 13, 2005
THOMAS K. KAHN
CLERK

_____

No. 04-13098
Non-Argument Calendar

_____

D.C. Docket No. 03-00719-CR-1-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

EMILIO BUONSIGNORE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(May 13, 2005)

Before ANDERSON, DUBINA and BARKETT, Circuit Judges.

PER CURIAM:

Appellant Emilio Buonsignore appeals his conviction and 151-month

sentence for possession with intent to distribute heroin and importation of heroin,

in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(i), 952(a), 960(a)(1), 960(b)(1)(A). On appeal, he asserts that (1) the district court abused its discretion by admitting expert testimony regarding the value of the heroin, (2) the district court erred by admitting his statements to Bureau of Customs and Immigration Enforcement ("BICE") officials, and (3) the district court erred, in light of *Blakely v. Washington*, 542 U.S. __, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), and *United States v. Booker*, 543 U.S. __, 125 S.Ct. 738, __ L.Ed.2d __ (2005), by imposing a two-level enhancement for obstruction of justice, and, in the alternative, the district court erred by imposing the enhancement because the evidence did not support such an enhancement.

I.

Buonsignore argues that the expert testimony regarding the heroin's value did not meet the requirements of Fed. R. Evid. 702 because the agent who testified did not conduct an independent analysis of the value of heroin and merely restated figures given to him by someone in Washington, DC. He contends that the agent did not have personal knowledge of the value and could not identify any of the underlying data on which his expert opinion was based, making his opinion insufficiently reliable. Buonsignore next submits that the agent's testimony as to the heroin's value violated the Confrontation Clause under *Crawford v.*

*Washington*, 541 U.S. 36, ___, 124 S.Ct. 1354, 1374, 158 L.Ed.2d 177 (2004), which allows prior testimonial statements to be admitted only if both (1) the declarant is unavailable and (2) the defendant had an opportunity to cross-examine the witness. He claims that the evidence regarding the value of the heroin was testimonial in nature, and the government made no showing that the declarant was unavailable. Buonsignore further argues that the valuation testimony was irrelevant and extremely prejudicial.

"We review for abuse of discretion the district court's decisions regarding the admissibility of expert testimony and the reliability of an expert opinion." *United States v. Frazier*, 387 F.3d 1244, 1258 (11th Cir. 2004) (*en banc*), *petition for cert. filed*, No. 04-8324 (Jan. 13, 2005). Rule 702 provides

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. District courts play a "gatekeeping" function regarding the admission of scientific and technical expert evidence. *Frazier*, 387 F.3d at 1260. "This function inherently require[s] the trial court to conduct an exacting analysis

of the *foundations* of expert opinions to ensure they meet the standards for admissibility under Rule 702." *Id.* (quotation omitted) (emphasis in original).

To determine whether expert evidence is admissible,

Trial courts must consider whether: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*Id.* Training and experience in the field can confer expert status. *Id.* at 1260-61. Regarding the reliability of the expert testimony and the second factor, the trial judge must evaluate the reliability of the testimony before admitting it, but has significant leeway in how he conducts the evaluation. *Id.* at 1262. As to the third factor, "expert testimony is admissible if it concerns matters that are beyond the understanding of the average lay person," and must pass the Rule 403 balancing test: its probative value must not be substantially outweighed by its prejudicial effect. *Id.* at 1263. "Testimony about the weight, purity, dosages, and prices of cocaine clearly relates to knowledge beyond the ken of the average juror." *United States v. Tapia-Ortiz*, 23 F.3d 738, 741 (2d Cir. 1994).

"In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. "The

4

Confrontation Clause of the Sixth Amendment to the Federal Constitution forbids the introduction of hearsay evidence against criminal defendants unless the offered hearsay falls into a firmly rooted hearsay exception or the hearsay statement at issue carries a particularized guarantee of trustworthiness." *United States v. Brown*, 299 F.3d 1252, 1258 (11th Cir. 2002), *vacated*, 538 U.S. 1010, 123 S.Ct. 1928, 155 L.Ed.2d 847 (2003), *opinion reinstated by* 342 F.3d 1245, 1246 (11th Cir.), *cert. denied*, 125 S.Ct. 37 (2004) (quotations omitted). Rule 703 allows experts to rely upon data which itself would not have been admissible if this data is "of a type reasonably relied upon by experts in the particular field in forming opinions." Fed. R. Evid. 703. We have held that

> Rule 703 encompasses hearsay statements in a context such as the instant one, where the government expert specifically testified that his opinion was based on his experience and expertise, in conjunction with the information he received from a DEA intelligence agent and Bermudan authorities, and that such sources of information were regularly relied upon in valuating narcotics.

*Brown*, 299 F.3d at 1257. We held in *Brown* that

> hearsay evidence relied upon by an expert in forming his opinion, as long as it is of a time regularly relied upon by experts in that field, is a 'firmly rooted' exception to the general rule of exclusion of hearsay statements, and therefore is not violative of a criminal defendant's confrontation rights.

*Id.* at 1258.

We noted that to the extent Brown's counsel desired to question the testifying DEA agent's sources and value determination, he did so effectively through cross-examination of the agent expert at trial. *Id.*

In *Crawford*, the Supreme Court held that prior testimonial statements may be admitted only if the declarant is unavailable and the defendant had an opportunity to cross-examine the declarant. *Crawford*, 541 U.S. at __, 124 S.Ct. at 1374 (noting prior testimony at a preliminary hearing, grand jury, or earlier trial as examples of testimonial statements). Nontestimonial statements, however, are not subject to those requirements, and may be exempt from Confrontation Clause scrutiny altogether. *Id.* at __, 124 S.Ct. at 1374. We have held that "erroneous admission of evidence does not warrant reversal if the error had no substantial influence on the outcome and sufficient evidence uninfected by error supports the verdict." *United States v. Harriston*, 329 F.3d 779, 789 (11th Cir. 2003) (quotations omitted) (noting also that error is harmless "where there is overwhelming evidence of guilt.").

Although we conclude that the district court abused its discretion by admitting expert testimony regarding the value of the drugs, the error was harmless and does not warrant reversal. The district court properly admitted the agent's testimony under Rule 702, as his training and experience qualified him to

testify as an expert in drug valuation. The district court evaluated the reliability of the agent's testimony and methodology he employed to arrive at his testimony. The drug value information helped the jurors better understand evidence at issue. Thus, it was admissible under Rule 702.

However, the drug valuation testimony violated the Confrontation Clause. Although Rule 703 allows experts to rely on otherwise inadmissible evidence in formulating their opinions and the agent's testimony complied with our decision in *Brown*, it is inadmissible under the standard set forth in *Crawford*. The agent's testimony was based on information obtained from an unidentified individual at the DEA in Washington, D.C. The evidence is testimonial in nature. The government has not shown that both (1) that individual is unavailable, and (2) Buonsignore had the opportunity to cross-examine that individual. Thus, it was a violation of the Confrontation Clause to admit it. Nonetheless, the admission of the drug valuation testimony had no substantial effect on the outcome and sufficient admissible evidence supported the verdict. Buonsignore admitted at trial that the handle from the bag containing heroin was his and previously admitted that the bag was his and had been in his possession from the time he checked it in Venezuela until he arrived in Atlanta. Evidence in the record connected the handle to the bag in which the heroin was found. The parties

7

stipulated that the amount of heroin was a distribution amount. Therefore, sufficient admissible evidence existed to support the verdict, making the erroneous admission of the drug value harmless.

II.

Buonsignore argues that because he was targeted for additional inspection he should have been given *Miranda* warnings before he was given a secondary examination and questioned by BICE agents. Additionally, Buonsignore asserts that the *Miranda* warnings given to him were constitutionally insufficient because they did not explicitly advise him of his right to have a lawyer appointed at no cost.

Because "[w]hether a person was in custody and entitled to *Miranda* warnings is a mixed question of law and fact," we review the district court's factual findings for clear error and its legal conclusions *de novo*. *United States v. McDowell*, 250 F.3d 1354, 1361 (11th Cir. 2001). We have held that "aliens at the border are entitled to *Miranda* warnings before custodial interrogation." *United States v. Moya*, 74 F.3d 1117, 1119 (11th Cir. 1996).

> Whether [a defendant] was "in custody" prior to his formal arrest depends on whether under the totality of the circumstances, a reasonable man in [his] position would feel a restraint on his freedom of movement . . . to such extent that he would not feel free to leave. The test is objective: the actual, subjective beliefs of the defendant

8

and the interviewing officer on whether the defendant was free to leave are irrelevant.

*McDowell*, 250 F.3d at 1362 (citations and quotations omitted). When a suspect is in a border zone, "whether interrogation is 'custodial' should be interpreted in light of the strong governmental interest in controlling the borders." *Id.* International airports are "functional equivalents" of the United States border, and suspicionless searches are permitted and reasonable under the Fourth Amendment. *United States v. Hill*, 939 F.2d 934, 936 (11th Cir. 1991). "[Q]uestioning at the border must rise to a distinctly accusatory level before it can be said that a reasonable person would feel restraints on his ability to roam to the degree associated with formal arrest." *McDowell*, 250 F.3d at 1362 (quotations omitted). Where a suspect

> was not physically moved or restrained by officers during the interview, no handcuffs were employed and no guns were drawn, he was not booked or told of formal accusations, nor told that he was under arrest, he did not ask to leave and was not told that he was not free to do so, and he made no admissions during the interview that would have led a reasonable person in his place to conclude that he would be arrested immediately[,]

he was not "in custody." *Id.* Further, we have held that "a secondary interview is part of the border routine and does not require *Miranda* warnings." *Moya*, 74 F.3d at 1120.

9

The Supreme Court "has never indicated that the 'rigidity' of *Miranda* extends to the precise formulation of the warnings given a criminal defendant." *California v. Prysock*, 453 U.S. 355, 359, 101 S.Ct. 2806, 2809, 69 L.Ed.2d 696 (1981). "Miranda itself indicated that no talismanic incantation was required to satisfy its strictures." *Id.* We have noted that the failure to include the notice of the right to appointed counsel does not render the defendant's statements inadmissible. *See Alvord v. Wainwright*, 725 F.2d 1282, 1298 (11th Cir. 1984).

After reviewing the record, we conclude that the district court did not err by admitting Buonsignore's statements. First, Buosignore was not in custody until he was formally arrested. Although he was given a secondary examination and asked questions, he was in a border zone and *Miranda* warnings were not required. He was asked the same questions every passenger is asked in secondary examination. Therefore, he was not in custody at the time of his secondary examination, and any statements he made at that time were admissible.

Second, the *Miranda* warnings given to him, in both verbal and written form, were constitutionally sufficient. We and the Supreme Court have held that no specific language must be used in the warnings so long as the defendant is informed of his rights. Buonsignore was informed both verbally and in writing, of

10

his rights, which included the right to have a lawyer appointed for him.  Thus, his statements were admissible and the district court did not err by admitting them.

III.

Buonsignore argues for the first time on appeal that the district court's application of a two-level enhancement to his sentence for obstruction of justice violated the rule of *Blakely*, 524 U.S. __, 124 S.Ct. 2531.  Additionally, while recognizing our holding to the contrary, he contends that the district court's application of the enhancement was erroneous because other circuits have held that providing false information to a magistrate judge does not necessarily trigger an obstruction of justice enhancement.  Alternatively, he submits the application of the enhancement is not appropriate because he was provided a Spanish interpreter instead of an Italian interpreter at the initial appearance.

"This Court reviews the district court's interpretation and application of the sentencing guidelines *de novo*." *United States v. Machado*, 333 F.3d 1225, 1227 (11th Cir. 2003).  When reviewing the application of U.S.S.G. § 3C1.1, we have determined:

> Where the district court must make a particularized assessment of the
> credibility or demeanor of the defendant, we accord special deference
> to the district court's credibility determinations, and we review for
> clear error.  Conversely, where the defendant's credibility or
> demeanor is not at issue, and the defendant's conduct can be clearly

11

set forth in detailed, non-conclusory findings, we review de novo the district court's application of the enhancement.

*United States v. Amedeo*, 370 F.3d 1305, 1318 (11th Cir. 2004) (citations and quotations omitted).

In *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S.Ct. 2348, 2362-63, 147 L.Ed.2d 435 (2000), the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." The Court revisited that rule in the context of Washington state's sentencing guideline scheme, clarifying that the

> the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant. . . .* In other words, the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings.

*Blakely v. Washington*, 542 U.S. at ___, 124 S.Ct. at 2537 (emphasis in original). Applying these principles, the Court held that Blakely's sentence, which was enhanced under the state guidelines based on the sentencing court's additional finding by a preponderance of the evidence that Blakely committed his kidnapping offense with deliberate cruelty, violated the Sixth Amendment. *Id.* at __, 124 S.Ct. at 2534-38. In a footnote, however, the Court explicitly remarked that "[t]he

12

Federal Guidelines are not before us, and we express no opinion on them." Id. at __ n.9, 124 S.Ct. at 2538 n.9.

Shortly thereafter, we held that *Blakely* did not apply to the Federal Sentencing Guidelines. *United States v. Reese*, 382 F.3d 1308, 1312 (11th Cir. 2004), *vacated*, No. 04-7570 (U.S. Jan. 24, 2005). Thus, we instructed district courts to continue to sentence defendants pursuant to the Guidelines "until such time as the Supreme Court rules on the issue." *Id.* While the instant case was pending on appeal, however, the Supreme Court issued its decision in *Booker*, finding "no distinction of constitutional significance between the Federal Sentencing Guidelines and the Washington procedures at issue" in *Blakely*. *Booker*, 543 U.S. at __, 125 S.Ct. at 749. Resolving the constitutional question left open in *Blakely*, the Court held that the mandatory nature of the federal guidelines rendered them incompatible with the Sixth Amendment's guarantee to the right to a jury trial. *Id.* at __,125 S.Ct. at 749-51. In extending its holding in *Blakely* to the Guidelines, the Court explicitly reaffirmed its rationale in *Apprendi* that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." *Id.* at __, 125 S.Ct. at 756.

13

In a second and separate majority opinion, the Court in *Booker* concluded that, to best preserve Congress's intent in enacting the Sentencing Reform Act of 1984, the appropriate remedy was to "excise" two specific sections—18 U.S.C. § 3553(b)(1) (requiring a sentence within the guideline range, absent a departure) and 18 U.S.C. § 3742(e) (establishing standards of review on appeal, including de novo review of departures from the applicable guideline range)—thereby effectively rendering the Sentencing Guidelines advisory only. *Id.* at __, 125 S.Ct. at 764. The Court explained that district courts are not bound to apply the Sentencing Guidelines, but "must consult those Guidelines and take them into account when sentencing." *Id.* at __, 125 S.Ct. at 767. The Court then announced that, under the remaining provisions of § 3742, courts of appeals must review sentences for "unreasonable[ness]." *Id.* at __, 125 S.Ct. at 765. The Court further indicated that both its "Sixth Amendment holding and . . . remedial interpretation of the Sentencing Act" must be applied to "all cases on direct review." *Id.* at __, 125 S.Ct. at 769. The Court cautioned, however, that not every sentence will give rise to a Sixth Amendment violation, nor would every appeal lead to a new sentencing hearing. *Id.* The Court instructed reviewing courts to apply "ordinary prudential doctrines, determining, for example, whether the issue was raised below and whether it fails the 'plain-error' test." *Id.*

14

Because Buonsignore failed to raise a constitutional challenge to his sentence in the district court, we review his claim for plain error only. *See United States v. Cotton*, 535 U.S. 625, 631-32, 122 S.Ct. 1781, 1785, 152 L.Ed.2d 860 (2002) (applying plain error review to defendant's newly raised claim under *Apprendi*); *Booker*, 543 U.S.at __, 125 S.Ct. at 769; *United States v. Rodriguez*, ___ F.3d ___, No. 04-12676 (11th Cir. 2004) (applying plain error under *Booker* to a *Blakely* challenge not raised in the district court).

Under plain error review, courts have "a limited power to correct errors that were forfeited because [they were] not timely raised in [the] district court." *United States v. Olano*, 507 U.S. 725, 731, 113 S.Ct. 1770, 1776, 123 L.Ed.2d 508 (1993) (citing Fed.R.Crim.P. 52(b)). An appellate court, however, may not correct an error the defendant failed to raise in the district court unless there is "(1) error, (2) that is plain, and (3) that affects substantial rights." *Cotton*, 535 U.S. at 631, 122 S.Ct. at 1785 (quotations and internal marks omitted). "If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affect[s] the fairness, integrity, or public reputation of the judicial proceedings." *Id.* (quotations omitted). Power under plain error review should be exercised "sparingly," *see Jones v. United States*, 527 U.S. 373, 389, 119 S.Ct. 2090, 2102, 144 L.Ed.2d 370 (1999), and only "in those

15

circumstances in which a miscarriage of justice would otherwise result." *See Olano*, 507 U.S. at 736, 113 S.Ct. at 1779 (quotation omitted).

A "new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases . . . pending on direct review . . ., with no exception for cases in which the new rule constitutes a 'clear break' with the past." *See Johnson v. United States*, 520 U.S. 461, 467, 117 S.Ct. 1544, 1549, 137 L.Ed.2d 718 (1997) (quotation and citation omitted); *Booker*, 543 U.S. at __, 125 S.Ct. at 769 (applying holdings to all cases on direct appeal). Thus, to the extent the guidelines were construed as mandatory at the time of Buonsignore's sentencing, the first prong of plain error review is satisfied. Furthermore, although the new rule announced in *Booker* was not plain at the time of Buonsignore's sentencing, "where the law at the time of trial was settled and clearly contrary to the law at the time of appeal–it is enough that the error be 'plain' at the time of appellate consideration." *See Johnson*, 520 U.S. at 468, 117 S.Ct. at 1549. The second prong of plain error, therefore, is also satisfied.

However, we recently held that, under the third prong, to show that the error affect substantial rights, a defendant has the burden of showing a "reasonable probability of a different result if the guidelines had been applied in an advisory instead of binding fashion by the sentencing judge." *Rodriguez*, ___F.3d at ___.

16

We went on to hold that "where the effect of an error on the result in the district court is uncertain or indeterminate—where we would have to speculate—the appellant has not met his burden of showing a reasonable probability that the result would have been different but for the error; he has not met his burden of showing prejudice; he has not met his burden of showing that his substantial rights have been affected." *Id.* In determining that *Booker* error occurred in *Rodriguez*, we noted that a § 3C1.1 enhancement for obstruction of justice may not have been a *Booker* error "because the jury verdict convicting the appellant of the crimes he denied necessarily, albeit implicitly, found that he had engaged in behavior that fit[] within § 3C1.1." *See Rodriguez*, ___F.3d at ___.

Here, as in *Rodriguez*, Buonsignore has not explained on appeal, much less proven under the third prong of plain error, how his substantial rights were affected by the district court's *Blakely* or *Booker* error. Moreover, a review of the record does not support such a conclusion. The record indicates that (1) Buonsignore told the magistrate judge that he earned $1,300 annually and could not afford to hire an attorney; (2) Buonsignore testified at trial that he made $130,000 annually; (3) Buonsignore denied ownership at trial of the bag and drugs; and (4) the jury convicted Buonsignore on all counts. Further, the district court made no indication that it would not have applied § 3C1.1 had the guidelines

17

not been mandatory at the time. Additionally, because the jury convicted Buonsignore despite his denials at trial, it implicitly found that his testimony warranted application of § 3C1.1. In sum, the district court erred under *Booker* and this error was "plain." However, we will not exercise our discretion to notice this forfeited error because Buonsignore has failed to carry his burden under the third prong of plain error to show that this pre-*Booker* error affected his substantial rights.

Turning to the merits of the obstruction of justice enhancement, section 3C1.1 provides that a two-level enhancement may be applied to the base offense level if "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing." U.S.S.G. § 3C1.1. The commentary to § 3C1.1 cites "providing materially false information to a judge or magistrate" and "committing, suborning, or attempting to suborn perjury" as examples of conduct to which the enhancement applies. *See id.*, comment. (n.4(f), (b)). However, it warns district courts "that inaccurate testimony or statements sometimes may result from confusion, mistake, or faulty memory and, thus, not all inaccurate testimony or statements necessarily reflect a willful attempt to obstruct justice." *Id.*, comment. (n.2). We have held that application of § 3C1.1 is proper when a

18

defendant makes false statements to the magistrate judge at a hearing to determine his eligibility for court-appointed counsel. *See United States v. Hitt*, 164 F.3d 1370, 1371 (11th Cir. 1999).

As noted above, Buonsignore testified before the magistrate judge that he earned approximately $1,300 a year and owned no property he could use to hire an attorney. The court appointed him counsel based on his testimony. He also told the agents at the airport that he made $1,300 annually, but he had $1,300 in cash on his person. He then testified at trial he made $130,000 annually. Thus, Buonsignore testified falsely either before the magistrate judge or at trial. Either one is conduct to which § 3C1.1 applies and to which its application is proper. Although Buonsignore claims that the agents at the airport mistakenly translated his annual income as $1,300, he repeated this figure to the magistrate judge, suggesting that it was not a mistake. Therefore, the district court did not err by applying the enhancement. For the foregoing reasons, we affirm Buonsignore's conviction and sentence.

**AFFIRMED.**

BARKETT, Circuit Judge, specially concurring.

I concur in the result, on the basis of <u>United States v. Rodriguez</u>, 398 F.3d 1291 (11th Cir. 2005).