OPINION *Page 2 
{¶ 1} Defendant-appellant George A. Bonnell appeals his conviction and sentence from the Delaware County Court of Common Pleas on one count of unauthorized use of a motor vehicle. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On May 5, 2006, the Delaware County Grand Jury indicted appellant on one count of receiving stolen property in violation of R.C.2913.51(A), a felony of the fourth degree. The property at issue was a Dollar Rental car vehicle. At his arraignment on May 10, 2006, appellant entered a plea of not guilty to the charge.
 {¶ 3} On June 14, 2006, appellant filed a Motion to Suppress any and all statements, whether oral or written, that he made to any law enforcement officers on April 27, 2006. Appellant, in his motion, sought to suppress statements that he made both prior to and after being given his Miranda warnings. Appellant also filed a pro se Motion to Suppress on July 6, 2006.
 {¶ 4} A suppression hearing was held on July 7, 2006. The following testimony was adduced at the hearing.
 {¶ 5} Deputy Daniel Pollock of the Delaware County Sheriffs Department testified that he was in uniform in a marked cruiser on April 27, 2006, at approximately 2:37 a.m. checking the license plates of vehicles at the I-71 northbound rest area. When he ran the license plate for the vehicle in which appellant was sleeping, the vehicle came back as stolen out of Louisville, Kentucky. The registered owner of the vehicle was Dollar Rental Car. Once Deputy Chris Stayer and Deputy Elverson arrived on the *Page 3 
scene, Deputy Pollock approached appellant's vehicle, woke appellant up and had him exit the vehicle.
 {¶ 6} As Deputy Pollock was patting appellant down for purposes of safety and was in the process of handcuffing appellant to detain him until the ownership of the vehicle could be confirmed, Deputy Pollock questioned appellant. At the hearing, the deputy testified that he asked appellant if the vehicle was his and that appellant told him that it was a rental car. The deputy testified that although appellant was not free to leave at such time, appellant was not under arrest. According to Deputy Pollock, when appellant was asked if he knew why he was being detained, "he stated because the car was overdue." Transcript of Suppression Hearing at 9. When asked how long the vehicle was overdue, appellant told the deputy that the vehicle had been overdue since Christmas.
 {¶ 7} Appellant was then placed in the back of Deputy Pollock's cruiser while the officers awaited confirmation from Kentucky that the vehicle had been reported stolen. Deputy Pollock testified that once the vehicle was confirmed as being stolen, appellant was advised of hisMiranda rights. The following testimony was adduced when Deputy Pollock was asked if he asked appellant if he understood those rights:
 {¶ 8} "A. Yes, I did.
 {¶ 9} "Q. Did you ask him if he was willing to waive those rights and speak to you?
 {¶ 10} "A. Yes, I did.
 {¶ 11} "Q. And what did he say?
 {¶ 12} "A. He stated yes. *Page 4 
 {¶ 13} "The Court: To both Questions?
 {¶ 14} "The Witness: He stated, yes, he would be willing to make a statement.
 {¶ 15} "By Mr. Rohrer:
 {¶ 16} "Q. The first questions was, you asked him if he understood them and what was his response?
 {¶ 17} "A. Oh, yes. Yes to that and, yes, he waived his rights.
 {¶ 18} "Q. Did you have him at that time execute a waiver in writing or not?
 {¶ 19} "A. No, we did not.
 {¶ 20} "Q. And why not?
 {¶ 21} "Due to the fact he was still handcuffed. We didn't want to get him out and uncuff him at the rest area to have him sign a form." Transcript of Suppression Hearing at 12-13.
 {¶ 22} Deputy Pollock testified that he then questioned appellant about the rental agreement found in the vehicle and confirmed that the vehicle was actually signed out by appellant on January 17, 2006, and was to be returned by January 31, 2006. Appellant indicated that he had signed the rental agreement. The deputy testified that he then asked appellant why he was in Ohio and where he was headed and that appellant told him that he was going to his sister's in New York to borrow money to pay for the vehicle. Appellant also told the deputy that he was homeless and was living in the vehicle.
 {¶ 23} Appellant was then transported to the jail where he was advised of his Miranda rights again. *Page 5 
 {¶ 24} Pursuant to a Judgment Entry filed on July 20, 2006, the trial court granted appellant's Motion to Suppress in part and denied the same in part. The trial court suppressed statements that appellant had made before he was placed in the police cruiser and advised of hisMiranda rights. The trial court further found that appellant had validly waived his Miranda rights and overruled appellant's Motion to Suppress with respect to statements that appellant made after beingMirandized.
 {¶ 25} Thereafter, appellant entered a plea of no contest to the lesser included offense of unauthorized use of a motor vehicle in violation of R.C. 2913.03(B), a felony of the fifth degree. As memorialized in a Judgment Entry filed on January 16, 2007, appellant was sentenced to time served in jail.
 {¶ 26} Appellant now raises the following assignments of error on appeal:
 {¶ 27} "I. THE TRIAL COURT ERRED IN DENYING IN PART APPELLANT'S MOTION TO SUPPRESS, AS THE MID-INTERROGATION MIRANDA WARNINGS WERE INEFFECTIVE AND THE STATEMENTS MADE AFTER THE WARNINGS ARE INADMISSIBLE.
 {¶ 28} "II. APPELLANT'S RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WAS VIOLATED BY APPOINTED COUNSEL'S FAILURE TO SECURE TESTIMONY FOR ALL THE DEPUTIES PRESENT DURING APPELLANT'S ARREST AT THE SUPPRESSION HEARING."
 I {¶ 29} Appellant, in his first assignment of error, argues that the trial court erred in denying in part appellant's Motion to Suppress. Appellant specifically argues that the *Page 6 
"mid-interrogation Miranda warnings were ineffective", and that statements made after the same are inadmissible. We agree.
 {¶ 30} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. See State v.Fanning (1982), 1 Ohio St.3d 19, 437 N.E .2d 583; State v. Klein (1991),73 Ohio App.3d 486, 597 N.E.2d 1141; State v. Guysinger (1993),86 Ohio App.3d 592, 621 N.E.2d 726. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. See State v. Williams (1993),86 Ohio App.3d 37, 619 N.E.2d 1141, overruled on other grounds. Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case.State v. Curry (1994), 95 Ohio App.3d 93, 641 N.E.2d 1172; State v.Claytor (1993), 85 Ohio App.3d 623, 620 N.E.2d 906; Guysinger, supra. As the United States Supreme Court held in Ornelas v. U.S., (1996),517 U.S. 690, 116 S.Ct. 1657," . . . as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal." *Page 7 
 {¶ 31} Appellant specifically argues that the trial court erred in denying appellant's Motion to Suppress statements he made after he was given his Miranda warnings.[1] Appellant contends that "the mid-interrogation Miranda warnings were ineffective and the statements made after the warnings are inadmissible."
 {¶ 32} In Missouri v. Seibert (2004), 542 U.S. 600, 124 S.Ct. 2601, the United States Supreme Court addressed the issue of whether the technique of successive interrogations, the first beforeMiranda warnings and the other(s) after, violated a defendant'sMiranda rights.[2] In Seibert, the defendant was taken to the police station for questioning after a fire at her home resulted in the death of one of the residents. She was questioned about the incident without first being provided her Miranda warnings and she made incriminating statements. The defendant was then issued her Miranda warnings and was confronted with the statements she had made before she was provided such warnings. The defendant then confirmed her previous statements.
 {¶ 33} The defendant in Seibert filed a Motion to Suppress both herpre-Miranda warning statements and her postwarning statement. After the District Court suppressed her prewarning statements becauseMiranda warnings should have been given but admitted her postwarning ones, the defendant appealed. The Missouri Court of Appeals then affirmed and the Missouri Supreme Court reversed.
 {¶ 34} On appeal, the United States Supreme Court, inSeibert, affirmed the judgment of the Missouri Supreme Court, holding that the defendant's post-Miranda warnings statements were inadmissible. The United States Supreme Court, in so holding, stated, in relevant part, as follows: "The object of question-first [before giving *Page 8 Miranda warnings] is to render Miranda warnings ineffective by waiting for a particularly opportune time to give them, after the suspect has already confessed.
 {¶ 35} "Just as `no talismanic incantation [is] required to satisfy [Miranda's] strictures,' California v. Prysock, 453 U.S. 355, 359,101 S.Ct. 2806, 69 L.Ed.2d 696 (1981) (per curiam), it would be absurd to think that mere recitation of the litany suffices to satisfyMiranda in every conceivable circumstance. The inquiry is simply whether the warnings reasonably `conve[y] to [a suspect] his rights as required by Miranda.' Duckworth v. Eagan, 492 U.S. 195, 203, 109 S.Ct. 2875,106 L.Ed.2d 166 (1989) (quoting Prysock, supra, at 361, 101 S.Ct. 2806). The threshold issue when interrogators question first and warn later is thus whether it would be reasonable to find that in these circumstances the warnings could function `effectively' as Miranda requires. Could the warnings effectively advise the suspect that he had a real choice about giving an admissible statement at that juncture? Could they reasonably convey that he could choose to stop talking even if he had talked earlier? For unless the warnings could place a suspect who has just been interrogated in a position to make such an informed choice, there is no practical justification for accepting the formal warnings as compliance with Miranda, or for treating the second stage of interrogation as distinct from the first, unwarned and inadmissible segment." Id at 611-612.
 {¶ 36} As noted by the Ohio Supreme Court in State v. Farris,109 Ohio St.3d 519, 2006-Ohio-3255, 849 N.E.2d 985, "Seibert points out that in `question first' scenarios when the circumstances of the given case show that the Miranda warning could not reasonably be found effective, the post warning statements are inadmissible because `the earlier and later statements are realistically seen as parts of a single, *Page 9 
unwarned sequence of questioning.' Id. at 612, 124 S.Ct. 2601,159 L.Ed.2d 643, fn. 4." Id at paragraph 21.
 {¶ 37} The United States Supreme Court, in Seibert, specifically held that the following factors should be considered in determining whetherMiranda warnings delivered midstream could be effective enough to accomplish their object: "the completeness and detail of the questions and answers in the first round of interrogation, the overlapping content of the two statements, the timing and setting of the first and the second, the continuity of police personnel, and the degree to which the interrogator's questions treated the second round as continuous with the first." Id at 615.
 {¶ 38} In the case sub judice, before he was given hisMiranda warnings, appellant was asked whether the vehicle was his, if he knew why he was being detained, and how long overdue the vehicle was. Appellant told Deputy Pollock that the vehicle was a rental car that was overdue since Christmas and that he knew that he was being detained because the car was overdue. Appellant was then placed in the police cruiser while it was confirmed that the vehicle was stolen. Deputy Pollock testified that it took three or four minutes to confirm that the vehicle was stolen and that appellant was then advised of hisMiranda rights. The following testimony was adduced when the deputy was asked what questions he asked appellant and what statements appellant made after such time:
 {¶ 39} "A. I really didn't ask him too much. After the vehicle was confirmed, we did a vehicle inventory and we found the rental agreement and I went back and asked him because he had stated earlier around Christmas he had taken the car. When, in fact, I believe it was January 17th it was signed out and was supposedly to be returned *Page 10 
by the 31st of January. I just verified that those were the dates that he had signed the agreement with Dollar General and he stated yes.
 {¶ 40} "Q. Did you ask him — well, first of all, let's back up a second. The rental agreement that was found in the car, was that in his name?
 {¶ 41} "A. Yes, it was.
 {¶ 42} "Q. Between he and Dollar Rent-A-Car?
 {¶ 43} "A. Correct.
 {¶ 44} "Q. And what, if anything, did he tell you about his situation or anything like that?
 {¶ 45} "A. Really not too much. I just asked why he was in Ohio and where he was headed and he stated he was going to his sisters [sic] in New York to borrow some money to pay for the vehicle.
 {¶ 46} "Q. Did he tell you where he was coming from?
 {¶ 47} "A. I had asked him — I'm not sure how I asked him, but basically he stated that the majority of the time he had the rental car it was in the Louisville, Kentucky area.
 {¶ 48} "Q. Did you ask him any other questions at that time that you recall, or did he give you any other statements at that time?
 {¶ 49} "A. I think really the only thing we discussed other than that was if he needed anything from the vehicle, medication; I believe his glasses, just stuff like that. I verified that his address was still Louisville. That's really about it. There wasn't much dialogue between us. *Page 11 
 {¶ 50} "Q. You indicated that in your report at one point that he explained that he was homeless and living in the car. Do you recall that?
 {¶ 51} "A. Yes." Transcript of Suppression Hearing at 13-15.
 {¶ 52} We find, based on the foregoing, that the trial court erred in overruling appellant's Motion to Suppress the statements he made after he was Mirandized. The statements were close in time to the statements appellant made prior to being given Miranda warnings, were elicited by the same deputy and overlapped in content with his earlier,pre-Miranda statements. As noted by appellant, both the pre andpost-Miranda interrogations concerned whether appellant had permission to use the vehicle and whether it was overdue. While the first interrogation took place outside of Deputy Pollock's cruiser, the second took place just minutes later while appellant was seated in back of the cruiser. As noted by appellant, that the second interrogation was treated as continuous with the initial interrogation is evidenced by the fact that the deputy "followed up with [appellant] about his statement that the car was due back prior to Christmas." We find that the "mid-stream" Miranda warnings in this case were not effective enough to accomplish their objectives and that the trial court, therefore, erred in not granting appellant's Motion to Suppress appellant's statements.
 {¶ 53} Appellant's first assignment of error is, therefore, sustained.
 II {¶ 54} Appellant, in his second assignment of error, argues that he received ineffective assistance of trial counsel. We disagree.
 {¶ 55} Our standard of review is set forth in Strickland v.Washington (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. Ohio adopted this standard in the case of *Page 12 State v. Bradley (1989), 42 Ohio St.3d 136, 538 N.E.2d 373. These cases require a two-pronged analysis in reviewing a claim for ineffective assistance of counsel. First, we must determine whether counsel's assistance was ineffective; i.e., whether counsel's performance fell below an objective standard of reasonable representation and was violative of any of his or her essential duties to the client. If we find ineffective assistance of counsel, we must then determine whether or not the defense was actually prejudiced by counsel's ineffectiveness such that the reliability of the outcome of the trial is suspect. This requires a showing that there is a reasonable probability that but for counsel's unprofessional error, the outcome of the trial would have been different. Id. at 141-142. Trial counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. State v. Sallie, 81 Ohio St.3d 673, 675,1998-Ohio-343, 693 N.E.2d 267.
 {¶ 56} Appellant specifically contends that his trial counsel was ineffective in failing to arrange for all of the deputies present at the time of appellant's arrest to testify at the suppression hearing. Appellant contends that one of the deputies, if subpoenaed, would have testified that he specifically was told by appellant that appellant wanted an attorney.
 {¶ 57} However, since such an argument essentially speculates as to evidence dehors the record (how the deputies would have testified if subpoenaed), it is not properly raised in a direct appeal. See State v.Lawless, Muskingum App. No. CT2000-0037, 2002-Ohio-3686, at 7, citingState v. Cooperrider (1983), 4 Ohio St.3d 226, 228, 448 N.E.2d 452. A petition for postconviction relief is the appropriate remedy for ineffective assistance of counsel claims based on facts dehors the record. See State v. *Page 13 Ayers (Nov. 25, 1998), Licking App. No. 98 CA 53, 1999 WL 3976, citingState v. Gibson (1980), 69 Ohio App.2d 91, 430 N.E.2d 954. We are, therefore, unable to conclude that trial counsel's failure to secure testimony from all of the deputies present at the time of appellant's arrest constituted ineffective assistance of trial counsel.Strickland, supra.
 {¶ 58} Appellant's second assignment of error is, therefore, overruled.
 {¶ 59} Accordingly, the judgment of the Delaware County Court of Common Pleas is reversed and this matter is remanded for further proceedings.
 Edwards, J. Hoffman, P.J. and Farmer, J. concur *Page 14 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Delaware County Court of Common Pleas is reversed and this matter is remanded for further proceedings. Costs assessed to appellee.
[1] We note that the trial court in this matter suppressed appellant's statements that were made before he was placed inside the cruiser and advised of his Miranda rights.
[2] The trial court, in its July 20, 2006, Judgment Entry, discussed the Seibert case. *Page 1