MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2016 ME 133
Docket:      Som-15-589
Argued:      June 10, 2016
Decided:     August 16, 2016

Panel:       SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

STATE OF MAINE

v.

MICHAEL D. FIGUEROA

JABAR, J.

[¶1]   Michael D. Figueroa appeals from a judgment of conviction of unlawful trafficking in scheduled drugs (Class B), 17-A M.R.S. § 1103(1-A)(A) (2015), entered in the Unified Criminal Docket (Somerset County, *Mullen, J.*) after the denial of his suppression motion and upon his conditional guilty plea. Figueroa contends that, because law enforcement did not specifically advise him before a custodial interrogation that he had the right to the presence of counsel during questioning, his statements during the interrogation must be suppressed.   Under the circumstances of this case, we disagree.   Here, where Figueroa was already represented by counsel who consented to the interrogation in his absence, where Figueroa himself initiated the interrogation by telling jail personnel that he wanted to talk with the officer

who later conducted the interrogation, and where Figueroa was clearly advised before the commencement of the interrogation that he had the right to counsel, we conclude that Figueroa was adequately advised of his constitutional rights and that he effectively waived the privilege against self-incrimination, rendering his statements admissible against him at trial. We therefore affirm the judgment.

## I. BACKGROUND

[¶2] Viewed in the light most favorable to the suppression court's decision, the motion record supports the following facts. *See State v. Ntim*, 2013 ME 80, ¶ 2, 76 A.3d 370. On April 7, 2015, Figueroa was arrested and charged by uniform summons and complaint with aggravated trafficking in scheduled drugs (Class A), 17-A M.R.S. § 1105-A(1)(H) (2015). After his arrest, Figueroa was transported to the Somerset County jail, where he received *Miranda* warnings[1] and invoked his right to counsel. The record does not illuminate what the *Miranda* warnings consisted of when they were delivered on this occasion.

[¶3] Figueroa was indicted on April 30 on charges of aggravated trafficking in scheduled drugs (Class A), 17-A M.R.S. § 1105-A(1)(H), the

---

[1] We refer throughout this opinion to the constitutional safeguards established by the United States Supreme Court in *Miranda v. Arizona*, 384 U.S. 436 (1966).

Class B trafficking charge of which he was later convicted, and unlawful possession of scheduled drugs (Class C), 17-A M.R.S. § 1107-A(1)(B)(1) (2014).[2] On April 15, 2015, counsel was appointed to represent Figueroa.

[¶4] While in custody, Figueroa told jail personnel on multiple occasions that he wanted to speak with Maine Drug Enforcement Agent Kelly Hooper. When jail personnel relayed this information to Agent Hooper, she contacted the prosecutor, who offered to reach out to Figueroa's counsel and advise him of Figueroa's wishes. Figueroa's attorney called Agent Hooper and stated that although he could not be present during the time that Agent Hooper proposed to meet with Figueroa, he did not object to the interview as long as it was recorded. This conversation between Figueroa's counsel and Agent Hooper occurred about one week before the officer went to the jail and interviewed Figueroa.

[¶5] On May 1, 2015, at 2:27 p.m., Agent Hooper met with Figueroa at the jail without any others present. Agent Hooper began an audio recording and then delivered the following *Miranda* warnings without using a *Miranda* card or asking Figueroa to complete a written waiver form.

---

[2] The statute has since been amended. *See* P.L. 2015, ch. 308, § 2 (effective Oct. 15, 2015).

[¶6] "Mike," she stated, "you know you have a right to remain silent." "Yes," Figueroa affirmed. Agent Hooper continued, "Anything you say can and will be used against you in a court of law. You have a right to an attorney. If you can't afford one, one will be furnished to you through the courts, which in fact you do have an attorney and [your attorney], um, has told me it's okay to talk with you. You requested to talk with me." "Yes, ma'am," Figueroa replied. Agent Hooper stated, "If you don't want to answer questions at any point, stop. If you change your mind, umm . . . ." "I have nothing to hide, Kelly," Figueroa replied.

[¶7] Agent Hooper did not expressly inform Figueroa that he had a right for counsel to be present during the interview.

[¶8] In the course of the interview, Agent Hooper asked questions about the crimes that Figueroa had been charged with, and Figueroa made incriminating statements. The tenor of the interview was congenial, and Figueroa referred to Agent Hooper by her first name. The interview was not lengthy. Agent Hooper employed no deceptive practices, and she did not promise to provide Figueroa with any assistance.

[¶9] On August 24, 2015, Figueroa filed a motion to suppress the statements that he had made to Agent Hooper on May 1, 2015. The court held

a hearing on the motion on November 3, 2015, during which it heard testimony from Agent Hooper and admitted in evidence an audio recording of the May 1 interview. On November 24, 2015, the court entered an order denying Figueroa's motion, concluding that although the *Miranda* warnings provided were far from perfect, they were sufficient to intelligibly convey the substance of Figueroa's constitutional rights. The court also concluded that Figueroa's conduct during the interview demonstrated "an intentional relinquishment or abandonment of known rights" that was "voluntary in the sense that it was the product of a free and deliberate choice." (Quotation marks omitted.)

[¶10] On November 30, 2015, Figueroa entered a conditional guilty plea to the Class B trafficking charge pursuant to M.R.U. Crim. P. 11(a)(2), reserving the right to appeal the denial of his suppression motion.[3] The court then entered a judgment of conviction on the plea, sentencing Figueroa to ten years' incarceration with all but thirty months suspended followed by a term of three years' probation, and ordering him to pay a $400 fine. Figueroa timely appealed to us. *See* M.R. App. P. 2(b)(2)(A).

---

[3] The State dismissed the remaining charges pursuant to M.R.U. Crim. P. 48(a).

## II. DISCUSSION

[¶11] Figueroa contends that Agent Hooper's incomplete recital of the *Miranda* warnings did not sufficiently communicate the substance of his right against compulsory self-incrimination. He maintains that the warning that he received was fatally defective because it only advised him of his right to counsel generally, and entirely omitted any reference to his right to have counsel present during the interview. He also insists that the infirmity of Agent Hooper's *Miranda* warning invalidated his waiver by depriving him of a full awareness of the nature of the right that he abandoned.

[¶12] When a defendant challenges the denial of a suppression motion on the basis of an alleged *Miranda* violation, we review the suppression court's factual findings for clear error, and review de novo whether the defendant received sufficient *Miranda* warnings, and whether the defendant knowingly, intelligently, and voluntarily waived the rights protected by *Miranda*. *See State v. Lockhart*, 2003 ME 108, ¶ 21, 830 A.2d 433; *State v. Marden*, 673 A.2d 1304, 1309 (Me. 1996). Here, because the suppression court's findings are uncontested, and because the State has not challenged the suppression court's determination that Figueroa was subjected to custodial

interrogation, we consider only the adequacy of Agent Hooper's *Miranda* warnings and the validity of Figueroa's *Miranda* waiver.

[¶13]  In *Miranda v. Arizona*, 384 U.S. 436 (1966), the United States Supreme Court recognized that the Fifth Amendment privilege against self-incrimination is jeopardized by the compelling pressures inherent in custodial interrogation.  *See Dickerson v. United States*, 530 U.S. 428, 434-35 (2000) (discussing *Miranda*).  "To give force to the Constitution's protection against compelled self-incrimination, the Court established in *Miranda* certain procedural safeguards that require police to advise criminal suspects of their rights . . . before commencing custodial interrogation."  *Florida v. Powell*, 559 U.S. 50, 59 (2010) (quotation marks omitted).  The *Powell* court reiterated *Miranda*'s requirements that a suspect must be warned

> (1) that he has the right to remain silent, (2) that anything he says can be used against him in a court of law, (3) that he has the right to the presence of an attorney, and (4) that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.

*Id.* at 59-60 (quotation marks omitted).

[¶14]  To protect the rights that the warnings describe, *Miranda* also established an exclusionary rule, conditioning the admissibility of a suspect's statement during custodial interrogation upon proof that the defendant

validly waived the privilege against self-incrimination after delivery of the foregoing warnings. 384 U.S. at 476. "The warnings required and the waiver necessary . . . are, *in the absence of a fully effective equivalent*, prerequisites to the admissibility of any statement made by a defendant." *Id.* (emphasis added). Thus, in order to demonstrate the admissibility of a suspect's statements during custodial interrogation, the State bears the burden of proving, by a preponderance of the evidence, that (1) law enforcement officers properly delivered *Miranda* warnings to the suspect before commencing the interrogation, and (2) the suspect knowingly, intelligently, and voluntarily waived the privilege protected by the warnings. *Marden*, 673 A.2d at 1308-09.

[¶15] "The prophylactic *Miranda* warnings are not themselves rights protected by the Constitution but are instead measures to insure that the right against compulsory self-incrimination is protected." *Duckworth v. Eagan*, 492 U.S. 195, 203 (1989) (alterations omitted) (quotation marks omitted). For this reason, the rigidity of the *Miranda* doctrine does not extend to "the precise formulation of the warnings" or otherwise require a "talismanic incantation." *California v. Prysock*, 453 U.S. 355, 359 (1981). The safeguard of the prescribed warnings may be satisfied by a "*fully effective equivalent*." *Id.* at

360 (quoting *Miranda*, 384 U.S. at 476). "In determining whether police officers adequately conveyed the four warnings, . . . reviewing courts are not required to examine the words employed as if construing a will or defining the terms of an easement. The inquiry is simply whether the warnings reasonably convey to a suspect his rights as required by *Miranda*." *Powell*, 559 U.S. at 60 (alterations omitted) (quotation marks omitted).

[¶16] In *State v. Ayers*, we held that

> [a]lthough some courts have required, strictly, that a person in custody be informed specifically of his right to the presence of an attorney during questioning, we regard as better reasoned those cases holding that *Miranda* . . . is directed to insuring that the substance of the constitutional rights of a person in custody be intelligibly conveyed to him.

433 A.2d 356, 365 (Me. 1981) (citations omitted). In *Ayers*, where the suspect was clearly advised that he had the right to have an attorney present before questioning began, and the officer asked whether the suspect would be willing to talk without having an attorney present, we concluded that the suspect had been adequately informed of the rights protected by *Miranda*. *Id.*

[¶17] Here, Figueroa was warned, in unqualified language, that he had "a right to an attorney." He was advised that the courts would furnish him an attorney if he could not afford counsel, and was expressly reminded that he did have an attorney. He was also advised that his attorney had consented to

the interview, which was about to occur in the attorney's absence. Nothing in the words used indicated that the right to counsel would be restricted after the questioning commenced. Rather, when viewed in the context of the surrounding circumstances, the warnings communicated an unqualified right to counsel, which could have been invoked by Figueroa at any time. *Cf.* 2 Wayne R. LaFave et al., *Criminal Procedure* § 6(a) (3d ed. 2007) (stating that when a defendant in custody and the defendant's attorney "actually arranged for an interrogation session to occur," that circumstance "may have some bearing on the need for *Miranda* warnings"). Under the circumstances of the interrogation—which Figueroa initiated and to which court-appointed counsel consented—we conclude that Agent Hooper's warnings regarding the right to counsel adequately and effectively apprised Figueroa that he had the right to the presence of counsel during questioning.

[¶18] Furthermore, the court did not err in finding that Figueroa understood the substance of his Fifth Amendment rights, and the evidence demonstrates that Figueroa effectively waived those rights by agreeing to speak with Agent Hooper after she advised him of his right to remain silent, his right to counsel, and the possible use of his statements. Figueroa was specifically warned that the State would use his statements against him, and

was thereby advised of the consequences of his decision to speak with the officer. "This is the ultimate adverse consequence [Figueroa] could have suffered by virtue of his choice to make uncounseled admissions to the authorities." *Patterson v. Illinois*, 487 U.S. 285, 293-94 (1988). We therefore conclude that Figueroa knowingly and voluntarily spoke with Agent Hooper after he was advised of his *Miranda* rights in a manner sufficient to protect him from the "'compelling pressures' inherent in custodial police interrogation," *Dickerson*, 530 U.S. at 440 (quoting *Miranda*, 384 U.S. at 467), and we affirm the denial of Figueroa's motion to suppress.

The entry is:

Judgment affirmed.

---

**On the briefs:**

Jeremy Pratt, Esq., and Ellen Simmons, Esq., Camden, for appellant Michael D. Figueroa

Maeghan Maloney, District Attorney, and Joelle S. Pratt, Asst. Dist. Atty., Office of the District Attorney, Skowhegan, for appellee State of Maine

**At oral argument:**

Jeremy Pratt, Esq., for appellant Michael D. Figueroa

Joelle S. Pratt, Asst. Dist. Atty., for appellee State of Maine

Somerset County Unified Criminal Docket docket number CR-2015-422
FOR CLERK REFERENCE ONLY