

STATE OF MAINE
CUMBERLAND, ss.

UNIFIED CRIMINAL COURT
PORTLAND
Docket Nos. CR-17-2103
CR-17-3257

STATE OF MAINE )
)
v. )
)
TANYA SANTOS )
)
Defendant )

ORDER ON DEFENDANT'S MOTION
FOR JUDGMENT OF ACQUITTAL

At the conclusion of a jury trial held on September 18 and 19, 2018, the jury returned a verdict of guilty on all twelve counts charged, which included four counts of Aggravated Forgery, four counts of Forgery, and four counts of Theft by Deception. The issue before the court is whether Defendant is entitled to a Judgment of Acquittal as to the Forgery and Aggravated Forgery convictions, Defendant having moved for a Judgment of Acquittal after the State rested and again at the close of the evidence. The court reserved decision on Defendant's motion, and, after the jury returned its verdict, requested that the parties brief the issue. Having considered Defendant's Memorandum of Law, filed October 5, 2018, and the State's Reply Memorandum of Law and Argument, filed October 19, 2018, in light of the standard governing motions for Judgment of Acquittal, the court finds and concludes as follows:

Under Maine law, "[a] person is guilty of forgery if, with the intent to defraud or deceive another person or government, he: A. Falsely makes, completes, endorses or alters a written instrument, or knowingly utters or possesses such an instrument; or B. Causes another, by deception, to sign or execute a written instrument, or utters such an instrument." 17-A M.R.S. § 703(1). In arguing that Defendant's forgery convictions should stand, the State points to evidence adduced at trial establishing that Defendant, with intent to defraud or deceive, knowingly possessed and used fake $100 bills. The problem with the State's argument is that, while the State is correct that to be convicted of forgery a person need not herself have falsely made, completed, endorsed, or altered a written instrument, the written instrument does need to have been falsely made, completed, endorsed, or altered by someone.

The State contends that the evidence supports a finding that the fake bills Defendant possessed used were falsely made. The State's argument, however, does not

1

take into account the statutory definition of "falsely made." Pursuant to 17-A M.R.S. § 701(3): "A person 'falsely makes' a written instrument when he makes or draws a complete written instrument in its entirety ... which purports to be an authentic creation of its ostensible author, maker or drawer ...." In other words, a person who possesses and uses a written instrument which is admittedly fake and which does not purport to be authentic may not properly be convicted of forgery. Inspection of the bills at issue makes clear that they do not on their face "purport to be authentic." On the contrary, although resembling actual currency, the $100 bills plainly state on the front "For Motion Picture Use Only" along with a seal stating "Cinema Props" and the words "Prop Money." In addition, the words "For Cinematic Use Only" likewise appear five times on each bill -- twice on the front and three times on the back, and Benjamin Franklin's visage, with its smirk and raised eyebrow, evidences a lack of authenticity. Since the bills do not purport to be authentic, they were not "falsely made," and since there is no evidence that they were falsely made, completed, endorsed, or altered -- by Defendant or by anyone else -- Defendant's possession and use of the bills cannot properly support Defendant's convictions for forgery.

Defendant's convictions for aggravated forgery cannot stand for the same reason. Pursuant to 17-A M.R.S. § 702, "A person is guilty of aggravated forgery if, with intent to defraud or deceive another person or government, he falsely makes, completes, endorses or alters a written instrument, or knowingly utters or possesses such an instrument" and the instrument forged falls within one of the categories set forth in § 702(1)(A-E). Assuming without deciding that the bills at issue are "[p]art of an issue of money ... issued by a government or governmental instrumentality," and thus within the scope of § 702(1)(A), because the bills do not "purport to be an authentic creation," and accordingly were not "falsely made," the evidence adduced at trial does not support Defendant's aggravated forgery convictions.

Pursuant to M.R. U. Crim. P. 29(a), the court "shall order the entry of a judgment of acquittal of one or more crimes charged ... if the evidence is insufficient to sustain a conviction of such crime or crimes." Having viewed the evidence in the light most favorable to the State, the court finds that the evidence adduced at trial is insufficient to support Defendant's forgery and aggravated forgery convictions, and accordingly GRANTS Defendant's Motion for Acquittal as to each of Defendant's forgery and aggravated forgery convictions. It is therefore hereby ORDERED that Judgment of

2

Acquittal shall enter as to Counts 1-6 of the Superseding Indictment in Docket No. 17-2103 as well as to Counts 1-2 and of the Indictment in Docket No. 17-3257.

The clerk shall schedule this matter for sentencing on Defendant's convictions for Theft by Deception at the earliest possible date.

DATED: 26Oct18

Jed J. French
Judge, Unified Criminal Court

Entered on the Docket: 10-26-18

3

STATE OF MAINE
CUMBERLAND, ss

SUPERIOR COURT
CRIMINAL ACTION
DOCKET NO. CR-17-2103
CR-17-3257

STATE OF MAINE

v.

ORDER ON MOTION TO SUPPRESS

TANYA SANTOS,

Defendant

Defendant seeks to suppress statements she made to Yarmouth Police Department Detective Paul Martin. Defendant argues that her waiver of her Miranda rights was not knowing and voluntary.[*] For the following reasons, the motion is denied.

FACTS

Defendant was arrested on March 21, 2017. She gathered her medicine, which she is required to take daily. She was transported to the Cumberland County jail and later that evening, she was transported to the Kennebec County jail. She told the jail personnel that she needed her medicine but did not receive it.

According to defendant, because of a prolapsed heart valve, she takes a medicine to prevent fluid from gathering in her heart. If she does not take the medicine, she cannot breathe well and is tired. These symptoms develop within a few hours. She is severely hypoglycemic. If her blood sugar is too low, she becomes lethargic, dizzy, and can become comatose. She takes glucose and if she does not receive that medicine, symptoms can be immediate. She takes stomach medicine daily because she has too much acid in the stomach. If she does not receive this medicine, she cannot eat and she did not eat while incarcerated. She takes a medicine for nerve pain. If she does not receive this medicine, she cannot sleep and feels miserable with her legs feeling as though they are on fire.

---

[*] The focus of defendant's motion is the waiver of her Miranda rights. (Mot. Suppress 2.) Defendant argued at the hearing, however, that the State was required to prove voluntariness beyond a reasonable doubt. The court addresses both issues.

1

Detective Martin was contacted by Lieutenant Perry regarding defendant's having passed counterfeit one hundred-dollar bills on March 20 and 21, 2017. Detective Martin reviewed the reports and arrest warrant for defendant, who was then in custody at the Kennebec County jail. He went to the jail on March 23, 2017 to speak with defendant. He interviewed defendant in a room at the Kennebec County jail. Defendant was in hand cuffs and leg shackles. The door was closed.

The interview was recorded. (Def.'s Ex. 1.) The video shows that Detective Martin explained why he was there and she understood. He said he had to read the Miranda rights to her because they would be talking about crimes. He asked if defendant would speak to him. He told her that he could not make any promises about leniency through the court but he would do what he can and what he says a lot of times goes a bit of a way with the District Attorney. He asked for her date of birth and she responded. Detective Martin then read the Miranda warnings from the form. He asked after each whether defendant understood and she replied that she did. She agreed to speak to him, reviewed the form, and signed it.

Defendant agreed she passed a one hundred-dollar bill at the Circle K in Yarmouth on March 20, 2017. She stated she did not know the bill was not U.S. currency and was not quite sure how she got the bill. She realized the bills were not good the next day when the bills were refused at Hannaford. She then stated with regard to dates that she was a little off because she had not had her medicine for a couple of days, she was hypoglycemic, her sugars were probably low, and she was a little lethargic. She told Detective Martin that she took medicine for hypoglycemia, for her heart, and a diuretic but no illegal drugs.

Defendant told Detective Martin her address, her ex-boyfriend's date of birth, and where her son attended school. She stated she received the bills from her recent tax refund from H & R Block in Topsham. Detective Martin stated that she was not being honest and asked why she would pass another one hundred-dollar bill at Rite Aid on March 21, 2017, after she learned at Hannaford that the bills were not good. She stated she passed the bill at Rite Aid before she went to Hannaford.

2

When Detective Martin told defendant that she did not receive the bills from a bank, defendant stated that apparently somebody gave her fake money and she had no idea how she received the money. He told her twice that law enforcement had videos of her conduct at the stores. He stated she was being honest about passing the bills because she knew law enforcement had those videos but he did not believe her story about not knowing where the bills came from. Defendant said that was his prerogative. Defendant laughed several times during the interview.

Defendant then stated she was a little bit off, did not feel good, and felt like she would pass out. They needed to get her medicine figured out because she had not received it for two days.

They discussed again where she had passed the bills. She agreed with Detective Martin's dates because she did not have a calendar. She identified the cars she had used.

Finally, they discussed the charges, class B felonies. She said she knew it was not good. She signed and dated the summonses. She then stated she needed sugar.

At the hearing on the motion, defendant did not recall hearing about her rights. She had little recollection about the interview. She remembered being taken to the interview from another building while shackled. She stated that without medicine, she may appear to be "with it" but she is not.

Detective Martin did not ask defendant if she felt well but defendant did not appear to him to be under the influence or experiencing medical issues. She appeared to understand and was not uncomfortable or confused.

At the hearing, Detective Martin could not recall whether she said she was on medicine or she did not have her medicine but she did mention medicine. He also testified that she did not say she thought she would pass out, as the video shows. If she had, he would have stopped the interview. He also would have stopped the interview if she appeared unwell. He did not stop the interview.

3

ANALYSIS

### Waiver of Miranda

In order for defendant's statements made to Detective Martin to be admissible, "the State bears the burden of proving by a preponderance of the evidence, that (1) law enforcement officers properly delivered Miranda warnings to the suspect before commencing the interrogation, and (2) the suspect knowingly, intelligently, and voluntarily waived the privilege protected by the warnings." State v. Figueroa, 2016 ME 133, ¶ 14, 146 A.3d 427; State v. Lockhart, 2003 ME 108, ¶ 21, 830 A.2d 433; State v. Coombs, 1998 ME 1, ¶ 15, 704 A.2d 387.

### Voluntary Statements

In order to find a statement voluntary, the State must prove beyond a reasonable doubt that the statement resulted from the "defendant's exercise of his own free will and rational intellect." State v. Caouette, 446 A.2d 1120, 1123-1124 (Me. 1982). "A confession is voluntary if it results from the free choice of a rational mind, if it is not the product of coerced police conduct, and if under all the circumstances its admission would be fundamentally fair." State v. Mikulewicz, 462 A.2d 497, 501 (Me. 1983). "A statement may be voluntarily made even if the defendant was injured, medicated, or in distress." State v. Lowe, 2013 ME 92, ¶ 22, 81 A.3d 360. The requirement that a statement must be voluntary in order to be admissible "gives effect to three overlapping but conceptually distinct values: (1) it discourages objectionable police practices; (2) it protects the mental freedom of the individual; and (3) it preserves a quality of fundamental fairness in the criminal justice system." Mikulewicz, 462 A.2d at 500.

In determining voluntariness, the court considers the totality of the circumstances, including

> The details of the interrogation; duration of the interrogation; location of the interrogation; whether the interrogation was custodial; the recitation of Miranda warnings; the number of officers involved; the persistence of the officers; police trickery; threats, promises or inducements made to the defendant; and the defendant's age, physical and mental health; emotional stability, and conduct.

State v. McNaughton, 2017 ME 173, ¶ 34, 168 A.3d 807; see also Withrow v. Williams, 507 U.S. 680, 693-94 (1993). "A confession, otherwise freely and voluntarily made, is not vitiated

4

by a promise of leniency unless such promise was the motivating cause of the confession." State v. Tardiff, 374 A.2d 598, 601 (Me. 1977). False promises of leniency jeopardize the voluntariness of a defendant's statements. See McNaughton, 2017 ME 173, ¶ 36, 168 A.3d 807; State v. Hunt, 2016 ME 172, ¶ 5, 151 A.3d 911; State v. Wiley, 2013 ME 30, ¶¶ 19-25, 61 A.3d 750.

CONCLUSIONS

In this case, the custodial interview between Detective Martin and defendant took place in a room at the Kennebec County jail and lasted 27.56 minutes. Detective Martin read the Miranda warnings from a form and defendant responded after each warning that she understood. Defendant was 50 years old at the time of the interview.

The video shows that defendant was not shaking and did not appear to be in distress or confused. She responded to Detective Martin's questions appropriately and clearly. She gave detailed information and corrected him when his time line for her conduct was incorrect, a correction that supports her argument that she did not know the bills were counterfeit when she passed them. The video does not support defendant's claim that she was not "with it" during the interview or that she could not breathe, was dizzy, or was suffering nerve pain, the symptoms she alleges result from not taking her medicine.

Detective Martin was not particularly persistent, although he raised several times the implausibility that defendant received the counterfeit bills from a bank. He did not try to trick defendant. He did say that he could not make promises about leniency through the court but he would do what he can and what he says a lot of times goes a bit of a way with the District Attorney. See State v. McNaughton, 2017 ME 173, ¶ 34, 168 A.3d 807

The State has proved that defendant knowingly, intelligently, and voluntarily waived her Miranda rights. Figueroa, 2016 ME 133, ¶ 14, 146 A.3d 427. Further, based on the totality of the circumstances, the State has proved beyond a reasonable doubt that the defendant's statements were voluntary. See State v. Sawyer, 2001 ME 88, ¶ 9, 772 A.2d 1173, 1176. Detective Martin made no specific suggestion or promise about how the prosecution or

5

sentencing would be better for defendant if she confessed. See McNaughton, 2017 ME 173, ¶¶ 36-37, 168 A.3d 807 (concluding that although police investigators had made problematic statements that they could "minimize it" if the defendant confessed, the trial court did not err in determining that incriminating statements were voluntarily made). Further, his statement was not the "motivating cause of the confession." Tardiff, 374 A.2d at 600. Defendant admitted her conduct recorded at the stores. She maintained her position, however, that she did not know the bills were counterfeit. Defendant's statements were not made under circumstances that offend "fundamental values of social policy and constitutional law." Hunt, 2016 ME 172, ¶ 20, 151 A.3d 91.

The entry is

The Defendant's Motion to Suppress is DENIED.

Date: April 5, 2018

_____
Nancy Mills
Justice, Superior Court

6